## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBBIE G. PLYLER; DEBORAH PLYLER,

  *Plaintiffs-Appellees / Cross-Appellants,*

v.

RUSSELL F. COX; DELANO S. COX; MARION F. COX, CAMPBELL COX; COX BROTHERS FARMS, a North Carolina general partnership,

  *Defendants-Appellants / Cross-Appellees,*

and

COX BROTHERS, INC., d/b/a Cox Brothers Farm; COX FARM MANAGEMENT, LLC d/b/a Cox Brothers Farm; COX LAND INVESTMENTS, LIMITED PARTNERSHIP; COX LAND COMPANY, LLC,

  *Defendants.*

## OPENING/RESPONSE BRIEF OF PLAINTIFFS

Preston O. Odom, III
J. Alexander Heroy
Jennifer M. Houti
JAMES, MCELROY & DIEHL P.A.
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
(704) 372-9870 (telephone)
podom@jmdlaw.com
aheroy@jmdlaw.com
jhouti@jmdlaw.com

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1445(L</u>     Caption: <u>Robbie G. Plyler et al. v. Russell F. Cox. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Robbie G. Plyler</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.     Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Preston O. Odom, III                    Date: _____05/31/2024_____

Counsel for: Robbie G. Plyler

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>24-1445(L</u>      Caption: <u>Robbie G. Plyler et al. v. Russell F. Cox. et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Deborah Plyler</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Preston O. Odom, III        Date:        05/31/2024

Counsel for: Deborah Plyler

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Table of Contents**.................................................................................i

**Table of Authorities**.........................................................................iv

**Jurisdictional Statement** .................................................................1

**Statement of the Issues**....................................................................3

**Statement of the Case** ......................................................................5

**Summary of Argument**...................................................................11

**Argument**..........................................................................................14

    I.    The District Court Properly Denied Defendants-Appellants' Motion for Judgment as a Matter of Law on the Issue of Last Clear Chance......................................................14

        A.    Applicable law on the doctrine of last clear chance .............14

        B.    The district court properly denied the motion as to Cox Brothers Farms ....................................................................17

        C.    The district court properly denied the motion as to the Individual Defendants .........................................................25

        D.    This Court should remand for a completely new trial if it disturbs the district court's denial of Defendants-Appellants' motion for judgment as a matter of law on the issue of last clear chance ................................................27

    II.    This Court Should Affirm the District Court's Rulings Regarding the Issues of Gross Negligence and Punitive Damages...............................................................................31

        A.    Defendants-Appellants cannot appeal from the denial of the motion for summary judgment on the issues of gross negligence and punitive damages.........................................31

B. The district court properly denied Defendants-Appellants' motion for judgment as a matter of law on the issue of gross negligence ................................................. 33

III. The District Court Did Not Abuse Its Discretion by Permitting the Introduction of Financial Evidence Prior to Liability for Punitive Damages Being Established ................. 38

IV. The District Court Did Not Abuse Its Discretion by Admitting the Testimony of Plaintiff's Safety Expert Mr. Decker ..................................................................................... 44

A. The district court properly performed its gatekeeping function in admitting Mr. Decker's testimony. .................... 44

B. The district court properly admitted Mr. Decker's opinions about OSHA regulations ........................................ 46

C. The district court properly admitted Mr. Decker's testimony about OSHA regulation 1910.272 and others ..... 49

D. The district court properly admitted Mr. Decker's opinion about the sliding steel door ...................................... 52

E. Any error by the district court was harmless ....................... 54

V. If a New Trial is Ordered Under Fed. R. Civ. P. 50(e), Then This Court Should Determine that the District Court Erred in Issuing an Instruction Limiting the Jury's Ability to Consider the Lack of an OSHA Investigation and Testimony that a Defendant Instructed Plaintiff Deborah Plyler Not to Contact OSHA ..................................................... 55

A. Standard of review for limiting instructions ........................ 56

B. The district court erred in limiting the jury's consideration of the OSHA-related testimony to the determination of punitive damages, and not liability .......... 57

1.   Defendants' failure to report to OSHA is probative of liability ............................................................................ 57

2.   Campbell's Instruction to Debbie Plyler Not to Contact OSHA Is Probative on Defendants' Liability ..... 63

**Conclusion** ................................................................................. 64

**Request for Oral Argument** ............................................... 65

**Certificate of Compliance** ................................................. 66

**Certificate of Service** ......................................................... 67

# TABLE OF AUTHORITIES

**Cases**

Abernathy v. Consol. Freightways Corp.,
    362 S.E.2d 559 (N.C. 1987)................................................................. 61

Adalman v. Baker, Watts & Co.,
    807 F.2d 359 (4th Cir. 1986)............................................................. 48

Adams v. New Eng. Scaffolding, Inc.,
    2015 U.S. Dist. LEXIS 170688 (D.C. Mass. Dec. 22, 2015)............ 46, 47

Albrecht v. Balt. & O. R. Co.,
    808 F.2d 329 (4th Cir. 1987)............................................................. 46

Atl. C. L. R. Co. v. Bennett,
    251 F.2d 934 (4th Cir. 1958)........................................................ 29, 30

Atlas Food Sys. & Servs. v. Crane Nat'l Vendors,
    99 F.3d 587 (4th Cir. 1996)............................................................... 28

Battle v. Kilcrease,
    189 S.E. 573 (Ga. Ct. App. 1936)..................................................... 61

Bellamy v. Edwards,
    354 S.E.2d 434 (Ga. Ct. App. 1987)................................................. 61

Bowie v. Sorrell,
    209 F.2d 49 (4th Cir. 1953)............................................................... 39

Bullins v. Schmidt,
    369 S.E.2d 601 (N.C. 1988).............................................................. 33

Cagle v. Norfolk Southern Railway Co.,
    242 F.2d 405 (4th Cir. 1957)..................................................... *passim*

Concrete R.R. Cross Ties Litig. CSX Transp. v. Lone Star Indus. (In re Lone Star Indus.),
1994 U.S. App. LEXIS 6957 (4th Cir. Apr. 7, 1994) ..........................29

Dupree v. Younger,
598 U.S. 729 (2023)............................................................. 31, 32

E. Brooks Wilkins Family Med., P.A. v. WakeMed,
784 S.E.2d 178 (N.C. Ct. App. 2016) ..................................... 19

Foster v. Hyman,
148 S.E. 36 (N.C. 1929)..................................................... 33, 61

George v. Greyhound,
708 S.E.2d 201 (N.C. Ct. App. 2011) ..................................... 34

Hathaway v. Bazany,
507 F.3d 312 (5th Cir. 2007)................................................53

Jenkins v. Akzo Noble Coatings, Inc.,
35 Fed. Appx. 79 (4th Cir. 2002) ......................................... 19

Jones v. Harrelson & Smith Contrs., LLC,
670 S.E.2d 242, (N.C. Ct. App. 2008), aff'd per curiam,
677 S.E.2d 453 (N.C. 2009)..................................................29

King v. Allred,
333 S.E.2d 758 (N.C. Ct. App. 1985) ................................... 59

Kumho Tire Co. v. Carmichael,
526 U.S. 137, 119 S. Ct. 1167 (1999)..................................... 44

Lantec, Inc. v. Novell, Inc.,
306 F.3d 1003 (10th Cir. 2002)...........................................53

Lins v. United States,
2024 U.S. Dist. LEXIS 66991 (D. Md. April 12, 2024)....................... 46

Magee v. J.R. Simplot Co.,
    2021 U.S. Dist. LEXIS 130628 (D. Idaho July 12, 2021) ................... 60

McKiver v. Murphy-Brown, LLC,
    980 F.3d 937 (4th Cir. 2020) ...................................................... 39, 40, 43

Nealy v. Green,
    534 S.E.2d 240 (N.C. Ct. App. 2000) ........................................ 16, 18, 19

Ortiz v. Jordan,
    562 U.S. 180 (2011) ................................................................................ 31

Outlaw v. Johnson,
    660 S.E.2d 550 (N.C. Ct. App. 2008) ........................................ 15, 16, 19

Projects Mgmt. v. Dyncorp Int'l LLC,
    734 F.3d 366 (4th Cir. 2013) ................................................................. 56

Redd v. Wilcohess, L.L.C.,
    742 S.E.2d 196, modified in part on other grounds,
    745 S.E.2d 10 (N.C. Ct. App. 2013) ......................................... 17, 18, 19

Rice v. Cmty. Health Ass'n,
    203 F.3d 283 (4th Cir. 2000) ................................................................. 28

Russ v. Causey,
    732 F. Supp. 2d 589 (E.D.N.C. 2010), aff'd, 468 Fed. App'x 267
    (4th Cir. 2012) .................................................................................. 34, 61

Sardis v. Overhead Door Corp.,
    10 F.4th 268 (4th Cir. 2021) ................................................................. 30

Schenk v. HNA Holdings, Inc.,
    613 S.E.2d 503 (N.C. Ct. App. 2005) ............................................. 37, 58

Secretary of Labor v. J.C. Watson Company,
    22 BNA OSHC 1235 (2008) ....................................................................

Simo v. Mitsubishi Motors N.A., Inc.,
 245 F. App'x 295 (4th Cir. 2007)..........................................29

State v. Cearley,
 2005 N.C. App. LEXIS 1568 (N.C. Ct. App. Aug. 2, 2005) ...............62

Trademark Props., Inc. v. A&E TV Networks,
 422 F. App'x 199 (4th Cir. 2011) ..........................................39

United States v. Awni Shauaib Zayyad,
 741 F.3d 452 (4th Cir. 2014)..........................................25-26

United States v. Campbell,
 963 F.3d 309 (4th Cir. 2020)..............................................49

United States v. Davis,
 845 F.3d 282 (7th Cir. 2016)..............................................56

United States v. Landersman,
 886 F.3d 393 (4th Cir. 2018)..............................................55

United States v. Palacios,
 677 F.3d 234 (4th Cir. 2012)..............................................45

United States v. Perkins,
 470 F.3d 150 (4th Cir. 2006)..............................................47

United States v. Rouse,
 2024 U.S. App. LEXIS 11226 (4th Cir. May 8, 2024) ........................45

United States v. Smith,
 919 F.3d 825 (4th Cir. 2019)..............................................45

United States v. Velazquez-Rivera,
 366 F.3d 661 (8th Cir. 2004)..............................................56

Vancamp v. Burgner,
  392 S.E.2d 453 (N.C. Ct. App. 1990), aff'd, 402 S.E.2d 375
  (N.C. 1991) ................................................................... 17, 20

Weisgram v. Marley Co.,
  528 U.S. 440 (2000) ............................................................ 30

White v. Consol. Planning, Inc.,
  603 S.E.2d 147 (N.C. Ct. App. 2004) ................................. 38

Wickersham v. Ford Motor Co.,
  997 F.3d 526 (4th Cir. 2021) ......................................... 39, 44

Yancey v. Lea,
  550 S.E.2d 155 (N.C. 2001) ................................................ 27

**Rules and Statutes**

28 U.S.C. § 1291 ..................................................................... 3

28 U.S.C. § 1332 ..................................................................... 1

29 C.F.R. § 1910.57 .............................................................. 47

29 C.F.R. § 1910.146 .................................................. 49, 50, 51

29 C.F.R. § 1910.272 ................................................... *passim*

Fed. R. Civ. P. 50(b) .............................................................. 2

Fed. R. Civ. P. 50(e) ............................................... 13, 27, 55

Fed. R. Civ. P. 59 ............................................................ 2, 11

Fed. R. Evid. 401 ............................................................. 8, 57

Fed. R. Evid. 403 ................................................................... 8

Fed. R. Evid. 702 ................................................................ 52

Fed. R. Evid. 704 ................................................................. 47

Fed. R. Evid. 803(10) ......................................................... 60

N.C.G.S. § 1A-1, Rule 9(j) ................................................. 49

N.C.G.S. § 1D-5(7) ............................................................ 34

N.C.G.S. § 1D-30 ............................................................... 29

N.C.G.S. § 8C-1, Rule 702(b) ............................................ 49

N.C.G.S. § 59-45(a) ..................................................... 26, 38

**Other Authorities**

11 Moore's Federal Practice – Civil § 56.130[3][c][i] (2024) .............. 32-33

# JURISDICTIONAL STATEMENT

On August 17, 2022, Robbie G. Plyler ("Robbie") and his wife, Deborah Plyler ("Deborah" or "Debbie") (together, "Plaintiffs" or "Plaintiffs-Appellees/Cross-Appellants"), commenced this civil action against nine Defendants in the United Stated District Court for the Western District of North Carolina.[1]  JA27-39.  Defendants accepted service of process and filed their respective Answers on October 14, 2022.  JA41-63.  The district court possessed diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  JA27-29, JA41-44; JA2622.

Following a two-week trial, the jury returned a verdict for Plaintiffs on November 16, 2023, finding Defendants-Appellants liable to them for compensatory damages totaling $2,500,000.00.  JA1859.  Judgment in

---

[1] The four individual Defendants, Russell F. Cox ("Rusty"), Delano S. Cox ("Delano"), Marion F. Cox ("Marion"), and Campbell Cox ("Campbell"), are referenced herein as the "Individual Defendants," and they also are "Defendants-Appellants" when referenced alongside Cox Brothers Farms, a general partnership ("Cox Brothers Farms").  Further, the term "Defendants" includes not only the five Defendants-Appellants, but also four additional entities dismissed at various stages below.  JA558-561 (dismissing Cox Land Investments, Limited Partnership and Cox Land Company, LLC, at summary judgment); JA851 (dismissing Cox Brothers, Inc., via stipulation); JA1634-1636 (dismissing Cox Farm Management, LLC, at trial).

accordance with verdict was subsequently entered on December 7, 2023. JA1869.

On December 14, 2023, Defendants-Appellants filed a renewed motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and moved in the alternative for a new trial pursuant to Fed. R. Civ. P. 59 ("Defendants-Appellants' Post-Trial Motion"). JA1871, JA2085. Also on December 14, 2023, Plaintiffs filed their Rule 59(e) Motion to Amend the Judgment and Motion for Costs ("Plaintiffs' Motion to Alter Judgment") seeking to amend the Judgment to provide for prejudgment interest and post-judgment interest, as well as to award Plaintiffs their costs. JA2085.

On April 10, 2023, the district court entered an Order denying Defendants-Appellants' Post-Trial Motion and partially granting Plaintiffs' Motion to Alter Judgment to include prejudgment interest in the total amount of $260,416.45 and post-judgment interest on the principal award at the rate of 1.228% (the "First Amended Judgment"). JA2090. Plaintiffs subsequently filed a Consent Motion to Amend/Correct the Clerk's Judgment to correct the calculation of post-judgment interest. JA2106. On April 23, 2024, the district court entered

an Order granting the Consent Motion to Amend/Correct the Clerk's Judgment to amend the post-judgment interest section of the First Amended Judgment to provide for post-judgment interest at the rate of 5.16% on both the principal award and pre-judgment interest (the "Second Amended Judgment"). JA2111.

Defendants-Appellants filed their Notice of Appeal from the Judgment, First Amended Judgment, and Second Amended Judgment (plus interlocutory rulings merged therein) on May 10, 2024. JA2114-2117. Plaintiffs filed their Notice of Cross-Appeal from the Judgment, First Amended Judgment, and Second Amended Judgment (plus certain interlocutory rulings merged therein) on May 24,2024. JA2120-2123. This Court consolidated the cross-appeals on May 31, 2024, JA2126-2128, over which it possesses jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

### Issues on Defendants-Appellants' Appeal

I.     Whether the district court properly denied Defendants-Appellants' motion for judgment as a matter of law on the issue of last clear chance.

II.     Whether this Court should summarily reject Defendants-Appellants' appeal from the denial of their motion for summary judgment on the issues of gross negligence and punitive damages.

III.    Whether the district court properly denied Defendants-Appellants' motion for judgment as a matter of law on the issue of gross negligence.

IV.     Whether the district court properly exercised its discretion in denying Defendants-Appellants' motion to bifurcate the trial and in admitting evidence of their ability to pay any punitive damages.

V.      Whether the district court properly exercised its discretion under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) in admitting the testimony of Plaintiffs' expert.

VI.     Whether the district court properly exercised its discretion by permitting Plaintiffs' expert to testify concerning Occupational Health and Safety Administration ("OSHA") regulations and the appropriate standard of care.

VII.    Whether the district court properly exercised its discretion by permitting Plaintiffs' expert to testify regarding certain OSHA regulations that Defendants-Appellants contend are irrelevant.

VIII. Whether the district court properly exercised its discretion in allowing Plaintiffs' expert to opine that a steel door covering the sump at issue was not an adequate guard because it would roll open when stepped on.

IX.    Whether the evidentiary errors that Defendants-Appellants contend the district court made substantially harmed them.

**Issue in Plaintiffs' Cross-Appeal**

I.    If this Court reverses the denial of Defendants-Appellants' Post-Trial Motion on the issue of last clear chance, then should this Court remand for a completely new trial and instruct the district court to permit the jury to consider evidence related to the lack of an OSHA investigation in assessing not only punitive damages, but also underlying liability?

**STATEMENT OF THE CASE**

Robbie began working for Cox Brothers Farms more than twenty years ago, where he was a fulltime employee on November 9, 2020. JA901, JA2623. Cox Brothers Farms is a general partnership; Marion and Delano are the sole partners. JA2622-2623. Marion and Delano also own the real property where Cox Brothers Farms' grain bins are located. JA2623. Their son, Rusty, is in charge of running the farming operation,

which includes a hog farm operation and a grain operation. JA1105, JA1117, JA2623. And Rusty's son, Campbell, likewise is responsible for the day-to-day operations of Cox Brothers Farms. JA2623.

In 2013, Cox Brothers Farms built a new grain bin, identified as Bin #2. JA906-908, JA1139. JA2241-2244. Bin #2 operates with a subfloor auger to help empty grain from the bin; in addition to the large center sump hole, three additional side sump drains (plus one for emergency purposes) are in the floor of the bin, opening up to the subfloor auger below. JA1057, JA1071-1077, JA2245-2246. As manufactured and installed, each of the side sumps had a rolling metal door and a guard sitting above that door consisting of three metal bars. JA2624. Within approximately one year of Bin #2's installation, Rusty and Campbell decided to cut out and remove the center bar on the grate of each sump so the grain could flow easier and faster. JA1066, JA1105, JA1107, JA1114, JA2624. No evidence was introduced that anyone at Cox Brothers Farms constructed, purchased, or required any temporary guard that could be used over the sumps whenever employees were inside the bin to clear out grain. See, e.g., JA1112. No one at Cox Brothers Farms bothered to inform Robbie or the other employees who worked

6

inside Bin #2.  JA925, JA948-949 JA1206-1207 (Campbell testifying: "It is not their job description to know about the bars cut out . . . .") (ellipsis added); see also JA1026, JA1048 (employees Felipe Leos and Mariano Gonzalez testifying no one told them a safety bar had been cut out from the sump).

On November 9, 2020, Robbie was miles away from Bin #2 when Rusty called and asked Robbie to assist with cleaning out Bin #2. JA1115.  Prior to November 2020, Robbie had not helped clean out a grain bin in several years, and he had only been inside Bin #2 once.  JA914-915, JA962.  That morning, Marion and Delano's grandson, Cramer Phillips ("Cramer"), who was a manager at Cox Brothers Farms, participated in the sweep cleanout process for Bin #2.  JA1061, JA2624-2625.  When Robbie arrived at Bin #2, all four other employees assigned to this job were already inside sweeping the grain towards the sump holes and down into the sweep auger.  JA925, JA1062.  The sweep and subfloor augers were running when Robbie arrived.  JA925-926.  The inside of the grain bin was dark and dusty, with very low visibility.  JA977-978, JA983-984, JA995, JA1007, JA1048.  Robbie entered the bin but did not, and could not, see that the center safety bar had been removed.  JA983-

7

984.  Nor was there any signage or warning.  JA1011, JA1651.  Robbie then talked Cramer inside the bin, who picked on him that he was "too old" to be in the bin.  JA926-927.

Cramer convinced Robbie to get out and took the broom from Robbie.  JA927.  Robbie took the shovel from Cramer, went to the door of Bin #2, and stood the shovel to the right of the door.  JA927 JA2246, JA2248.  Robbie then turned around to look where his co-workers were and was pulled down by the subfloor auger.  JA927, JA1658.  The safety bar having been cut and removed, Robbie's right leg went into the open drain sump and rotating unimpeded.  JA927, JA2624, JA2628.  Robbie became trapped as his leg was mangled by the auger, JA2629 (video of Robbie shortly after the incident), and he had to instruct other employees to reverse the auger's rotation to free his leg.  JA928.  As a result of his injuries, Robbie ultimately lost his right leg below the knee and is now permanently disabled and unable to work, in addition to suffering pain and emotional anguish.  JA936, JA946-948, JA2182-2186, JA2624-2625.

Prior to trial, Defendants-Appellants moved *in limine* pursuant to Fed. R. Evid. 401 and 403 to exclude testimony regarding the lack of an OSHA investigation of Robbie's injuries as irrelevant and unfairly

prejudicial.  JA634.  At the final pretrial conference, the district court granted the motion in part to exclude testimony concerning the fact of Defendants-Appellants' failure to report Robbie's injuries to OSHA, but denied the motion to allow Plaintiffs to elicit testimony concerning communications between the parties about reporting – or not reporting – Mr. Plyler's injuries to OSHA.  JA835-836, JA1865-1868.  During the course of trial, the district court *sua sponte* directed the parties to provide supplemental briefing on this evidentiary issue.  JA1454-1456.  Following briefing and argument by counsel, the district court ruled in part: "The Court will not allow evidence of a lack of investigation for purposes of determining defendant's liability and will provide the jury with a limiting instruction as to how this evidence may be considered."  JA1592.  The district court further permitted Debbie to testify regarding Campbell telling her not to contact OSHA.  JA1592.  Following Debbie's testimony on that point, the trial court instructed the jury: "The testimony you just heard may only be considered for the amount of punitive damages if you deem any are appropriate.  This testimony may not be considered for purposes of determining any liability."  JA1597.

The district court memorialized its full ruling in a post-trial Order entered on November 28, 2023 ("MIL Order"). JA1864.

At the close of Plaintiffs' evidence, Defendants-Appellants moved for judgment as a matter of law on all issues, generally, but made specific arguments only as to the issues of last clear chance, gross negligence, and punitive damages.[2] JA1627-1636. The district court denied Defendants-Appellants' motion, JA1633-1636, as well as their cursory renewal at the close of all the evidence. JA1665, JA1734.

Following the two-week trial, the jury returned a verdict on November 16, 2023, awarding Robbie $2,000,000.00 and Debbie $500,000.00 from Defendants-Appellants in compensatory damages for negligence and loss of consortium, respectively. JA1859. In doing so, the jury found that Defendants-Appellants were negligent and had the last clear chance to save Robbie from his own contributory negligence, then

_____

[2] Cox Farms Management, LLC, likewise moved for judgment as a matter of law as to all issues implicating it, JA1627-1628, 1634-1636, which the district court granted given the stipulation that Cox Brothers Farms owned Bin #2 in which Robbie suffered his catastrophic injury. JA1635-1636, JA2623. Plaintiffs initially cross-appealed from that ruling as well as, among other things, the denial of their motion for judgment as a matter of law regarding contributory and gross contributory negligence. JA2120-2123. Plaintiffs are no longer pursuing their cross-appeal regarding those two rulings, however.

bypassed (as instructed) the issues of gross negligence and gross contributory negligence before finding Defendants-Appellants not liable for punitive damages. JA 1859-1863.

On December 7, 2023, the Clerk of Court entered the Judgment in accordance with the jury's verdict. JA1869. The Judgment was subsequently amended twice. JA2091, JA2112. Defendants-Appellants moved for judgment as a matter of law or, alternatively, for a new trial pursuant to Rules 50(b) and 59 on December 14, 2023. JA1872. On April 10, 2024, the district court denied Defendants' motion in its entirety. JA2091. Defendants-Appellants thereafter filed their Notice of Appeal on May 10, 2024, JA2115, and Plaintiffs filed their Notice of Cross-Appeal on May 24, 2024. JA2121. Plaintiffs now respectfully submit their arguments in opposition to Defendants-Appellants' appeal and in support of their cross-appeal.

## SUMMARY OF ARGUMENT

The district court correctly denied Defendants-Appellants' motion for judgment as a matter of law on the issues of last clear chance and gross negligence. Sufficient evidence was presented at trial to permit the reasonable jury to find that Defendants-Appellants knew or should have

known of Robbie's helpless peril when he entered Bin #2 to assist with the grain cleanout and had the last clear chance and sufficient time to avoid the injury but failed to do so. Defendants-Appellants likewise falter in attempting to appeal from the denial of their summary judgment motion on the issues of gross negligence and punitive damages, as such denial is unreviewable after a trial on the merits. And though the jury did not reach the issue of gross negligence, the district court also properly found the evidence at trial sufficient to permit the jury to find Defendants-Appellants' conduct constituted gross negligence.

The district court also did not err in denying Defendants-Appellants' motion to trifurcate the trial and in admitting evidence concerning Defendants-Appellants' financial status and ability to pay during the trial. And the fact that the jury declined to award punitive damages—while awarding compensatory damages commensurate with Robbie's economic damages alone—belies any argument that such evidence prejudiced Defendants-Appellants in any way.

Nor did the district court abuse its discretion in admitting the reliable and relevant testimony of Plaintiffs' safety expert, Jeffrey Decker ("Mr. Decker"). Rather, the district court rightly allowed Mr. Decker to

testify concerning certain regulations promulgated by OSHA as pertinent to the standard of care for Defendants-Appellants' operations. It also correctly allowed Mr. Decker to opine that a sliding steel door over the sump hole at issue did not meet the applicable standard of care because, in his extensive professional experience, such doors slide open and are not designed or intended to act as guards for those sump holes.

Finally, if this Court were to conclude the district court improperly denied Defendants-Appellants' Post-Trial Motion on the issue of last clear chance, then it should remand for a new trial on all issues as permitted by Fed. R. Civ. P. 50(e). And in doing so, this Court should determine that the district court erred in issuing an instruction limiting the jury's ability to consider evidence of the lack of an OSHA investigation—and testimony that Campbell directed Debbie not to contact OSHA—which should not be repeated in the new trial. Contrary to the district court's ruling, the jury should have been permitted to consider that evidence in determining Defendants-Appellants' overarching liability, and not solely in determining punitive damages.

# **ARGUMENT**

I. <u>The District Court Properly Denied Defendants-Appellants' Motion for Judgment as a Matter of Law on the Issue of Last Clear Chance</u>.

Defendants-Appellants contend in their brief ("Defs.' Br.") that the district court erred in denying them judgment as a matter of law on the issue of last clear chance. Defs.' Br., pp. 20-34. Admissible record evidence and applicable North Carolina law undermine their position, however. Specifically, as detailed herein, there was sufficient record evidence for a reasonable jury to conclude that Defendants-Appellants had the last clear chance to avoid Robbie's injury.

   A.   <u>Applicable law on the doctrine of last clear chance.</u>

As the district court properly instructed the jury,[3] to invoke the doctrine of last clear chance, a plaintiff must prove:

> First, that the plaintiff negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care.
>
> Second, that defendant knew, or by the exercise of reasonable care should have discovered, the plaintiff's position of peril and inability to escape from it.
>
> Third, the defendant had the time and means to avoid injury to the plaintiff and failed to exercise reasonable care to do so.

---

[3] Defendants-Appellants do not argue that the district court improperly instructed the jury on this issue and do not appeal from this instruction.

And fourth, that such failure proximately caused the
plaintiff's injury.

JA1750.[4]

As this Court recognized long ago in considering North Carolina
law, the last clear chance doctrine law applies to a plaintiff "who is
merely oblivious to his situation and [who] would have the physical
capacity to extricate himself if he were alert to the danger." Cagle v.
Norfolk Southern Railway Co., 242 F.2d 405, 409 (4th Cir. 1957)
(alteration added).  Thus "[i]f the victim is unaware of his impending
peril, but the defendant is or, from the circumstances, should be, aware
of plaintiff's persistent inattentiveness, the defendant, having the last
clear – some North Carolina cases say the better – opportunity to avoid
the accident, will be held for his failure to avail himself of it." Id.
(alteration added).

In other words, where a plaintiff "failed to pay attention to his own
surroundings, thereby placing himself in a position of inadvertent peril,"
the doctrine of last clear chance will apply. Outlaw v. Johnson, 660

---

[4] The jury instruction does not make the hyper-technical distinction
between a "helpless plaintiff" and "inattentive plaintiff" that Defendants-
Appellants did not advance in either their Trial Brief or Rule 50(a)
arguments at trial.  JA729, JA1627-1636, JA1665, JA1676-1677, JA1734.

S.E.2d 550, 557 (N.C. Ct. App. 2008). For example, in <u>Outlaw</u>, the plaintiff drove a steamroller hit by a motor vehicle the defendant was driving on the highway. <u>Id.</u> at 557-58. As the plaintiff did not look behind him and never saw the defendant's vehicle approaching, there was a reasonable inference that the plaintiff had placed himself in a position of inadvertent peril. <u>Id.</u> Because, with the exercise of reasonable care, the defendant should have seen the steamroller sooner than he actually did, he had the time and means to move over and avoid colliding with the steamroller. <u>Id.</u> at 558 ("[T]he question is not whether [the defendant] had the time and means to avoid the collision upon seeing the steamroller, but rather whether he had the time and means to do so after he *should* have seen the steamroller.") (alterations added, emphasis in original).

Notably, the Court of Appeals held in <u>Outlaw</u> that a plaintiff who negligently fails to observe their danger is in a position of helpless or inadvertent peril, where, in contrast, a plaintiff who does observe their danger but negligently fails to avoid it is not in a position of helpless peril. <u>Id.</u> at 239, 660 S.E.2d at 556. Accordingly, North Carolina courts have reasoned that a plaintiff "who did not apprehend imminent danger 'could

not reasonably have been expected to act to avoid injury.'" <u>Nealy v. Green</u>, 534 S.E.2d 240, 244 (N.C. Ct. App. 2000) (quoted source omitted).

Crucially, "[e]very case must turn on its particular facts." <u>Vancamp v. Burgner</u>, 392 S.E.2d 453, 455 (N.C. Ct. App. 1990), <u>aff'd</u>, 402 S.E.2d 375 (N.C. 1991). "Where physical facts are largely uncontested, but the inferences are disputed, the choice between conflicting inferences is to be made at a trial." <u>Cagle</u>, 242 F.2d at 411.

B. <u>The district court properly denied the motion as to Cox Brothers Farms</u>.

Defendants-Appellants contend that the relevant time period in this case for purposes of applying the last clear chance doctrine is the "fraction of a second" between when Robbie "began to step into the open sump" and his injury. Defs.' Br., pp. 26-27. According to Defendants-Appellants, Robbie was not in peril until his foot was already entering the sump hole, and because no one saw him in the act of stepping into the sump hole, no one else was aware of his peril or could have done anything. Defendants-Appellants are incorrect.

As an initial matter, Defendants-Appellants' reliance on <u>Redd v. Wilchess, L.L.C.</u>, 742 S.E.2d 196, <u>modified in part on other grounds</u>, 745 S.E.2d 10 (N.C. Ct. App. 2013), is misplaced. The decision in <u>Redd</u>

ostensibly relies upon <u>Nealy</u>, <u>see</u> 742 S.E.2d at 199, but in fact misstates

<u>Nealy</u>'s holding. In <u>Nealy</u>, the Court of Appeals held that for purposes of

the first element of the last clear chance doctrine, a position of

helplessness "*is not* one of true helplessness, as the injured party is in a

position to escape. Rather, the negligence consists of failure to pay

attention to one's surroundings and discover his own peril." 534 S.E.2d

at 244 (emphasis added).

To emphasize this, <u>Nealy</u> addressed a long line of North Carolina

cases explaining that last clear chance applies where a pedestrian does

not observe an approaching vehicle, but the doctrine does not apply

where a pedestrian observes oncoming traffic but fails to move out of the

way.[5] <u>Id.</u> The <u>Redd</u> decision, however, mistakenly cites <u>Nealy</u> for the

proposition that a defendant's time to avoid the injury does not begin

until a plaintiff is in a position of "true helplessness" for the doctrine to

apply – in that case, when plaintiff was in the act of slipping. 742 S.E.2d

---

[5] As stated above, <u>Redd</u> follows the latter pattern in that, there, the plaintiff observed the wet floor signs (although stated that they were hard to read) but failed to act accordingly. <u>See</u> 742 S.E.2d at 198-99. Therefore, <u>Redd</u> falls outside the bounds of the last clear chance doctrine. Here, Robbie testified that he did not know that the safety bar was removed and never observed the exposed danger. JA913, JA948-949, JA972, JA983, JA993.

at 199.  This is the exact opposite of the true holding in <u>Nealy</u>, rendering <u>Redd</u> wholly unpersuasive on this point.[6]

And even if <u>Redd</u> soundly applied precedent, it would not govern the outcome here.  In <u>Redd</u>, the plaintiff's contributorily negligent act was failing to adhere to the warning given by the "wet floor" signs, then slipping on the wet floor.  742 S.E.2d at 199.  Accordingly, <u>Redd</u> properly fits within the framework where the plaintiff observes the danger (such as oncoming traffic) but fails to avoid it (move out of the way).  <u>See Outlaw</u>, 660 S.E.2d at 556; <u>Nealy</u>, 534 S.E.2d at 244.  Further, the defendant employee there testified that he never saw the plaintiff at any time before she fell.  <u>Redd</u>, 742 S.E.2d at 198.  In contrast, here Defendants-Appellants attempted to put on evidence and argued to the jury that Robbie was contributorily negligent through a failure to observe

---

[6] <u>Nealy</u>, as the earlier decision, necessarily trumps <u>Redd</u> where they conflict.  <u>See, e.g.</u>, <u>E. Brooks Wilkins Family Med., P.A. v. WakeMed</u>, 784 S.E.2d 178, 185 (N.C. Ct. App. 2016) ("When prior decisions of this Court conflict, the earlier of those decisions is controlling precedent.").  And, of course, only decisions of the Supreme Court of North Carolina are precedential in this diversity action.  <u>See, e.g.</u>, <u>Jenkins v. Akzo Noble Coatings, Inc.</u>, 35 Fed. Appx. 79, 83 (4th Cir. 2002) ("'As a court sitting in diversity, we have an obligation to interpret the law in accordance with the [jurisprudence of the North Carolina Supreme Court], or where the law is unclear, as it appears that the [North Carolina Supreme Court] would rule.'") (alterations in <u>Jenkins</u>, quoted source omitted).

the open, unguarded sump holes. JA1792, 1798-1800. In addition, Cramer testified that he had a conversation with Robbie during which Robbie's intent to enter the bin was clear. JA1065.

Far more instructive is the decision in <u>Vancamp</u>, where applying the last clear chance doctrine largely turned on determining "[a]t what point in crossing the street was plaintiff in a position of 'helpless peril.'" 392 S.E.2d at 455 (alteration added, quoted source omitted). In this vein, the Court of Appeals rejected "defendants' argument that plaintiff was in no peril until she walked into defendant-driver's lane of travel," instead holding that "[a] pedestrian who is walking across the street, and is about to walk into the path of an oncoming car, and who does not see the car, is *obviously in peril before she steps directly in front of the car*." <u>Id.</u> (emphasis added) (remanding for new trial because the trial court erroneously directed a verdict for defendants on issue of last clear chance). And the Supreme Court of North Carolina affirmed upon reviewing the evidence in the light most favorable to the plaintiff. <u>See</u> 402 S.E.2d at 377 (observing that the plaintiff "placed herself in a position of helpless peril when she attempted to cross West Hill Avenue

without benefit of traffic control signals or a marked pedestrian crosswalk").

Robbie was in peril from the moment he stepped inside Bin #2 on November 9, 2020, ignorant of the danger posed by the altered sump hole guard. Defendants-Appellants argued as much to the jury by contending that Robbie was contributorily negligent that day both when he opened the side sump hole doors more than a couple of inches, and when he did not observe that the doors were open wide and the center safety bar missing. JA1799. The jury also heard testimony from various witnesses and saw photographs showing that the sump hole into which Robbie fell was just a couple feet from the only door into the grain bin. JA972, JA1075, JA1138, JA2411, JA2418. As such, the jury could have reasonably found that Robbie was in peril before he stepped directly into the sump hole, and in fact was in peril the instant he entered the grain bin but did not observe the open the sump hole doors and missing safety bar. The jury then reasonably could find that there was "a time interval between the discovery of the plaintiff's peril, or the time when such peril *should have been discovered*, and the moment of the accident, during which interval the defendant did in fact have the last clear chance to

avoid the result." <u>Cagle</u>, 242 F.2d at 410 (emphasis added); <u>see</u> <u>id.</u> (holding that "the point of time when the plaintiff's negligence ceases is not controlling").

Moreover, the jury received sufficient evidence to conclude that Cramer – grandson of Defendants Marion and Delano and a manager and agent of Cox Brothers Farms[7] – knew or should have known of Robbie's peril as soon as Robbie entered the bin. Cramer testified that he instructed Robbie to operate the doors over the sump holes during the cleanout process. JA1065. Cramer then assisted with the sweep process by doing "the shovel work," following the sweep auger around the bin and shoveling the remaining grain in front of the sweep auger – meaning that Cramer knew or should have known that the side sump doors were open as he walked around the bin shoveling grain. JA1059-1060, JA1065. Robbie further testified that Cramer knew Robbie was inside the bin. JA926-927. In fact, Robbie testified that he had an entire conversation with Cramer just three to four feet from the sump holes, noting "[m]e and him talked" and Cramer "convinced me to get out" of the bin. JA926-

---

[7] Cramer was the shop manager for Cox Brothers Farms. JA1055; <u>see</u> <u>also</u> JA998-999 (Andrew Presson testifying that Cramer was a manager).

927.[8]  Robbie gave Cramer his broom, took Cramer's shovel to the door,

stood the shovel "to the right of the door . . . and turned around to see

where they was at" when he fell to his knees, his foot in the auger.  JA927

(ellipsis added).  Likewise, had Defendants-Appellants placed a sign or

other warning that the safety bar had been removed, Robbie could have

seen it and acted accordingly.  Unfortunately, Defendants-Appellants did

not take any such precaution which could have prevented his injury.

In other words, the relevant time period for purposes of applying

the last clear chance doctrine in this case is, at least, from the moment

Robbie first entered Bin #2 until the moment his foot went into the sump

hole.  During that time, Cramer knew that the side sump doors were open

more than a couple inches, knew a safety bar had been removed from

each sump hole, and had an opportunity to warn Robbie but failed to do

so.  See JA926, JA1065.  Because there was sufficient evidence for the

---

[8] Cramer claimed not to have seen Robbie enter Bin #2 that day,
testifying that he conversed with Robbie outside the bin.  JA1065.  The
jury was free to weigh the credibility of Cramer's testimony against the
conflicting testimony of Robbie.  However, even had the jury found
Cramer credible, his testimony still indicated that he saw Robbie in a
dust mask with a shovel "climb[] up" and take "a step up on the side of
the door like he was going to get in."  JA1065.  From that alone, Cramer
knew or should have known that Robbie intended to enter the bin and
should have warned him of the missing safety bar.

jury to find that Cramer had adequate time to warn Robbie of the danger posed by the missing safety bar over the open sump hole immediately before Robbie stepped into the sump hole, but did not, the record supported a reasonable jury determination that Defendants-Appellants had the last clear chance to avoid the incident.

Defendants-Appellants' attempt to argue that the jury could not have reasonably found that Cox Brothers Farms had the last clear chance is simply contrary to North Carolina law. For, "[i]f it should be shown . . . that [defendants], having knowledge of the plaintiff's obliviousness when there was still sufficient opportunity to warn him or to stop the train, nevertheless ran him down without making an effort to avoid the accident, we would be loath to believe that North Carolina law would hold the defendant immune from liability. [. . .] As we understand the North Carolina cases, they do not condone such callous indifference to human life." Cagle, 242 F.2d at 409-10 (alterations and ellipses added). Accordingly, this Court should affirm the district court's denial of Cox Brothers Farms' motion for judgment as a matter of law on the issue of last clear chance.

C.  The district court properly denied the motion as to the Individual Defendants.

The Individual Defendants additionally contend they could not have been held liable under the last clear chance doctrine because none of them were "physically present or able to discover Mr. Plyler's danger or do anything to prevent his injury." Defs.' Br., p. 25. But they failed to preserve this issue for appeal.

The third issue submitted to the jury was: "Did the Defendants have the last clear chance to avoid the plaintiff Robbie Plyler's injury or damage?" JA1749, JA1861. Defendants-Appellants failed to raise this discrete issue in their Rule 50(a) arguments at trial. JA1628-1629, JA1665, JA1734. They also did not object to the third issue being phrased to the jury as whether "Defendant*s*" – plural – had the last clear chance. JA1676-1677. They likewise made no attempt to differentiate themselves from Cox Brothers Farms on this point in closing argument. JA1828-1829. Simply put, Defendants-Appellants failed to preserve any argument that the instruction and issue on last clear chance should have been addressed separately as to the Individual Defendants (or not at all). United States v. Awni Shauaib Zayyad, 741 F.3d 452, 459 (4th Cir. 2014)

("To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal.").

Substantively, even had the Individual Defendants preserved this argument for appeal, their contention is unavailing. The parties stipulated to Marion and Delano being the sole partners of Cox Brothers Farms. JA1613. As the district court instructed the jury, "a general partnership is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company." JA1741-1742; <u>see also</u> N.C.G.S. § 59-45(a) (providing, *inter* alia, that in a general partnership, "all partners are jointly and severally liable for the acts and obligations of the partnership"). At trial, Defendants-Appellants did not dispute Marion and Delano's liability, as general partners, for the conduct of Cox Brothers Farms' employees. The jury also heard testimony that Rusty knew the safety bar had been removed from the sump drain in Bin #2, but never bothered to tell Robbie that crucial information – including on the morning of November 9, 2020, when Rusty directed Robbie to go to Bin #2 to assist with the cleanup. JA925, JA948-949, JA972, JA993,

JA1105.  In short, the jury reasonably could find Marion, Delano, and Rusty directly or vicariously liable via the doctrine of last clear chance.

D.     This Court should remand for a completely new trial if it disturbs the district court's denial of Defendants-Appellants' motion for judgment as a matter of law on the issue of last clear chance.

If this Court were to reverse the denial of Defendant-Appellants' motion for judgment as a matter of law on the issue of last clear chance, then it should order a new trial on all issues pursuant to Fed. R. Civ. P. 50(e).  See id. (indicating that should an appellate court reverse the denial of a Rule 50(b) motion, "it may order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment").

Most importantly, even absent a finding of last clear chance, the jury could have ultimately held Defendants-Appellants liable under Plaintiffs' claim for gross negligence.  See, e.g., Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001) ("Contributory negligence is not a bar to a plaintiff's recovery when the defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries.").  However, the parties agreed to the form of the verdict sheet which instructed the jury not to reach the issue of gross negligence in the event they found

Defendants-Appellants had the last clear chance to prevent Robbie's injury. JA1728-1729 ("[I]f defendants had the last clear chance, then no issues of gross negligence on either side need to be reached by the jury. That settles the issue and there's liability. If there was no last clear chance, the jury then has to move on to were defendants grossly negligent.") (alteration added).

Moreover, a new trial on fewer than all the issues would be problematic. A partial new trial is permissible only if "the issues to be retried are sufficiently 'distinct and separable from the others that a trial of [those issues] alone may be had without injustice.'" Atlas Food Sys. & Servs. v. Crane Nat'l Vendors, 99 F.3d 587, 599 (4th Cir. 1996) (quoted source omitted). "Most commonly courts have granted a partial new trial confined only to damages . . . ." Rice v. Cmty. Health Ass'n, 203 F.3d 283, 290 (4th Cir. 2000) (ellipsis added).

Even then, however, if the damages issue cannot be severed from liability, it cannot be re-tried separately. For example, in this Circuit, courts "should not order a new trial on the sole issue of punitive damages if 'the evidence relating to wilful misconduct is so inextricably tied up with that relating to primary negligence that a fair trial upon either issue

requires a trial of both issues together,'" or if the evidence the plaintiff uses "to support his punitive damages claim is largely the same evidence on which he relies to establish" liability. <u>Simo v. Mitsubishi Motors N.A., Inc.</u>, 245 F. App'x 295, 302 (4th Cir. 2007); <u>accord</u> <u>Jones v. Harrelson & Smith Contrs., LLC</u>, 670 S.E.2d 242, 252 (N.C. Ct. App. 2008), <u>aff'd</u> <u>per curiam</u>, 677 S.E.2d 453 (N.C. 2009) (noting that pursuant to N.C.G.S. § 1D-30, a North Carolina appellate court "cannot direct a trial court, on remand, to conduct only the punitive damages phase of the bifurcated trial. Rather, any remand requires that the trial court start over at the beginning with the liability phase before proceeding to the punitive damages phase"). In short, "[t]he grant of a new trial on part of the issues is improper 'unless it is clear that no injustice will result.'" <u>Concrete R.R. Cross Ties Litig. CSX Transp. v. Lone Star Indus. (In re Lone Star Indus.)</u>, 1994 U.S. App. LEXIS 6957, at *26 (4th Cir. Apr. 7, 1994).

As this Court has long held, a new trial cannot be restricted to a "single issue without injustice to the defendant, [where] the evidence relating to wilful misconduct is so inextricably tied up with that relating to primary negligence that a fair trial upon either issue requires a trial of both issues together." <u>Atl. C. L. R. Co. v. Bennett</u>, 251 F.2d 934, 939

(4th Cir. 1958). Along those lines, similar to <u>Bennett</u>, the issues of negligence, contributory negligence, gross negligence, gross contributory negligence, and both compensatory and punitive damages are so intertwined that justice would require all issues be retried together, rather than piecemeal. Finally, as this Court in <u>Bennett</u> warned, there is no guarantee that a jury hearing the entire case would reach the same conclusion as one that is hemmed in and issued a binding instruction on certain issues. <u>See</u> 251 F.2d at 939. And that is particularly important here, where, as detailed in Argument V, <u>infra</u>, the district court erroneously limited the purposes for which the jury could consider evidence regarding (1) the absence of an OSHA investigation into the incident that caused Robbie to lose his lower right leg; and (2) the instruction Campbell gave Debbie that she not contact OSHA.

In sum, were this Court to reverse the denial of Defendants-Appellants' motion for judgment as a matter of law on the issue of last clear chance, justice and fairness would counsel that *all* remaining issues be tried again in front of a single jury, including all claims, defenses, and punitive damages. <u>See, e.g.</u>, <u>Sardis v. Overhead Door Corp.</u>, 10 F.4th 268, 299 (4th Cir. 2021) (quoting <u>Weisgram v. Marley Co.</u>, 528 U.S. 440, 454

(2000), for the proposition that when an appellate court is exercising its discretion in determining whether to grant a new trial upon reversing a denial of judgment as a matter of law, "'fairness to the parties'" is key).

II.     This Court Should Affirm the District Court's Rulings Regarding the Issues of Gross Negligence and Punitive Damages.

   A.     Defendants-Appellants cannot appeal from the denial of the motion for summary judgment on the issues of gross negligence and punitive damages.

Defendants-Appellants attempt to appeal from the district court's denial of their motion for summary judgment on the issues of gross negligence and punitive damages. Defs.' Br., pp. 38-40. Their attempt summarily fails.

"May a party . . . appeal an order denying summary judgment after a full trial on the merits? Our answer is no." Ortiz v. Jordan, 562 U.S. 180, 183-84 (2011); see id. at 184 ("[O]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion.") (alteration added). In other words, "after trial, a district court's assessment of the facts based on the summary-judgment record becomes 'ancient history and [is] not subject to appeal,'" as "[f]act-dependent rulings must be appraised in light of the complete trial record." Dupree v. Younger, 598 U.S. 729, 734 (2023)

(alterations added, internal citation omitted). Because Defendants-Appellants challenge the denial of summary judgment on the issues of gross negligence and punitive damages based entirely on the sufficiency of the evidence before the district court at summary judgment, <u>see</u> Defs.' Br., pp. 38-40, and because the district court denied summary judgment on those issues based on extant genuine issues of material fact, JA561 (indicating "it is clear from this record that the parties' evidence reveals a genuine dispute as to material facts that preclude the entry of judgment" to Defendants-Appellants), Defendants-Appellants' challenge to the summary judgment ruling is plainly unreviewable. <u>See, e.g.</u>, <u>Dupree</u>, 598 U.S. at 735 (ruling that "factual issues addressed in summary-judgment denials are unreviewable on appeal" after trial). This Court should eschew such challenge accordingly and, instead, confine its review to Defendants-Appellants' contentions concerning the issue of gross negligence based on the record presented at trial. <u>See generally</u> 11 Moore's Federal Practice – Civil § 56.130[3][c][i] (2024) ("The proper procedure in the face of an [alleged] erroneous denial [of summary judgment] based on perceived factual disputes is to move for judgment as a matter of law at trial under Rule 50. If that motion is denied, it may

be renewed after the verdict.  An appellate court may then review the denial of *that* motion.") (alterations added, emphasis in original).

B. <u>The district court properly denied Defendants-Appellants' motion for judgment as a matter of law on the issue of gross negligence.</u>

Defendants-Appellants curiously appeal from the district court's denial of their motion for judgment as a matter of law on the basis that a jury purportedly could not have found gross negligence, despite the fact the jury did not reach that issue.  Regardless, ample evidence was introduced at trial on which the jury could have found that Defendants-Appellants were, indeed, grossly negligent.

Gross negligence consists of "wanton conduct done with conscious or reckless disregard for the rights and safety of others." <u>Bullins v. Schmidt</u>, 322 N.C. 580, 583 (N.C. 1988).  Conduct which "manifest[s] a reckless indifference to the rights of others "constitutes gross negligence, such that the "wrongdoer's conduct is so reckless or so manifestly indifferent to the consequences . . . as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." <u>Foster v. Hyman</u>, 148 S.E. 36, 37-38 (N.C. 1929) (ellipsis added).  Similarly, "'[w]illful or wanton conduct' means the conscious and intentional

disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C.G.S. § 1D-5(7) (alteration added). "This can be shown by 'a reckless indifference to the consequences of the act.'" Russ v. Causey, 732 F. Supp. 2d 589, 609 (E.D.N.C. 2010), aff'd, 468 Fed. App'x 267 (4th Cir. 2012).

The evidence at trial established that Defendants-Appellants purposely set about "'not to discharge a duty' imposed by the safety regulation" established by OSHA, which is sufficient to establish willful and wanton conduct. George v. Greyhound, 708 S.E.2d 201, 206, 207 (N.C. Ct. App. 2011) (concluding that evidence of a "deliberate purpose" not to discharge an imposed safety duty or acting with reckless indifference to the rights of others could support punitive damages award).

Here, the bar that was removed from the sump was a safety device designed to prevent the exact injury Robbie suffered. JA2255 ("These sumps were manufactured and installed with 3 horizontal bars welded into the top flange as a guard to prevent contact with the rotating auger flighting."). The danger posed is so great that Mr. Decker, despite all his years of experience and his thorough lock-out/tag-out procedure to ensure

equipment was off while he was inspecting Bin #2, testified that he did not wish to expose himself to the risk posed by an unguarded auger by trying to step onto the sliding metal door. JA1369-1370, JA1372. Defendants-Appellants themselves were aware of the risk posed by the subfloor auger, as Rusty acknowledged to the jury that every day every person is exposed to danger inside a grain bin. JA1107.

Defendants-Appellants knew that the manufacturer's manual for Bin #2 contained basic safety rules requiring they ensure that "all covers, grates and guards are in place" and that they not modify or redesign the bin without first obtaining written approval from the manufacturer, but they nonetheless sought no input from the manufacturer prior to cutting out the safety bar. JA1112-1113, JA1203-1204, JA1219, JA2155. Though Defendants-Appellants misleadingly claim that Plaintiffs' expert, Mr. Decker, testified in his *deposition* that it is not negligent to remove the center safety bar, in truth, Mr. Decker opined at trial that "[i]f you remove the bars or don't have bars, the employer has to provide temporary sump guards to protect if you are going to put employees in

there." JA1355.[9]  The jury heard testimony that Rusty and Campbell did not bother to tell the employees they sent inside those grain bins – including Robbie – that they had removed safety bars installed in the sump guards by the manufacturer.  JA925, JA948-949; JA1206-1207; see also JA1026, JA1048 (employees Felipe Leos and Mariano Gonzalez testifying no one told them a safety bar had been cut out from the sump).

Defendants-Appellants admit that they caused the center safety bar to be cut out of the sump hole guards in Bin #2 in order to, as Cramer testified and Rusty and Campbell corroborated, make their operations easier.  See, e.g., JA1066 ("It allows it to flow, grain to flow," so that it does not "clump up and stop up your bin.").  Further, on that particular day, they were "in a little bit of a hurry" in cleaning out Bin #2.  JA1064. From all the evidence presented and in the light most favorable to Plaintiffs, the jury could reasonably infer that the center safety bar was cut out to make Cox Brothers Farms' operations faster, and presumably, more profitable, without regard to the safety risk it posed to employees – regardless of Rusty's self-serving testimony he did what he thought was

---

[9] Defendants-Appellants acknowledge that Mr. Decker "offered the only evidence at trial as to industry standard practices with respect to grain bin clean outs."  Defs.' Br., p. 43.

safest for the farm's employees. Defs. Br., pp. 43-44 (citing such testimony at JA1144, JA1357-1360). Moreover, as detailed elsewhere herein, Defendants-Appellants' intentional choice not to report Robbie's injuries to OSHA, and to instruct Debbie not to contact OSHA, establishes a conscious and callous disregard for Robbie's welfare that evidences willful and wanton conduct sufficient to support both gross negligence and an award of punitive damages.[10]

In sum, Defendants-Appellants knew of the safety hazard intentionally created by their removal of bars from the sump guards and knew of alternate temporary guards and procedures necessary to comply with OSHA regulations and mitigate that hazard, but intentionally chose not to implement them, deliberately deciding that the employees cleaning the bin did not need to be informed of the missing bar or given any warning. Such callous, reckless indifference to the rights and safety of

---

[10] The facts here are thus readily distinguishable from <u>Schenk v. HNA Holdings, Inc.</u>, 613 S.E.2d 503 (N.C. Ct. App. 2005), in that the failure to follow OSHA safety regulations here directly and proximately related to Robbie's injuries; was done purposefully for expediency and to benefit Defendants-Appellants; and there was evidence that the jury should have been permitted to consider that Defendants-Appellants further refused to report Robbie's injury to OSHA and demanded his wife not contact OSHA, further evidencing their willful, wanton, and callous disregard for Robbie's rights and safety.

Cox Brothers Farms' employees, including Robbie, was plainly sufficient to allow a jury to conclude that Defendants-Appellants' conduct was grossly negligent, had the jury reached the issue.[11]

As the district court correctly concluded, "[s]ubstantial evidence of willful and wanton conduct related to cutting out the bar of the sump grate and the overall operation of the grain bin was presented at trial to support a finding of gross negligence and an award of punitive damages." JA2100. This Court should reject Defendants-Appellants' position regarding gross negligence accordingly.

III. <u>The District Court Did Not Abuse Its Discretion by Permitting the Introduction of Financial Evidence Prior to Liability for Punitive Damages Being Established</u>.

Defendants-Appellants also argue that the district court erred in permitting the introduction of evidence of their finances and assets prior before the jury found any liability for punitive damages. Defs.' Br., pp.

---

[11] Again, as the general partners of Cox Brothers Farms, and employer of Rusty and Campbell, Marion and Delano are vicariously liable for Rusty and Campbell's acts of gross negligence in having the center bar removed without providing a temporary guard or warning employees. <u>See, e.g.</u>, N.C.G.S. § 59-45(a) (generally prescribing that "all partners are jointly and severally liable for the acts and obligations of the partnership"); <u>White v. Consol. Planning, Inc.</u>, 603 S.E.2d 147, 157 (N.C. Ct. App. 2004).

44-50.  To the contrary, the district court aptly exercised its sound discretion in ruling as it did.

A trial court exercises its discretion in its rulings on the admissibility of evidence, such that they are entitled "to substantial deference, and will be upheld so long as it is not arbitrary or irrational."  Trademark Props., Inc. v. A&E TV Networks, 422 F. App'x 199, 216-17 (4th Cir. 2011).  Similarly, as federal courts are not bound by North Carolina's bifurcation statute on punitive damages, N.C.G.S. § 1D-30, a district court's decision whether to bifurcate (or trifurcate) a trial is revised for abuse of discretion.  McKiver v. Murphy-Brown, LLC, 980 F.3d 937, 974 (4th Cir. 2020); Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1953).  "Any abuse of discretion is reviewed for harmless error, and a new trial is required only when the admission of evidence affected the substantial rights of a party."  Wickersham v. Ford Motor Co., 997 F.3d 526, 531 (4th Cir. 2021).

Prior to trial, Defendants-Appellants moved to have the jury consider liability and damages in separate phases.  JA565.  The district court properly exercised its discretion and denied that motion, ruling that separating liability from damages was "inappropriate, particularly considering the Court's ability to eradicate any potential for unfair

prejudice through limiting instructions to the jury during the presentation of evidence." JA580. In accordance with that ruling, the district court also denied Defendants-Appellants' pretrial motion in line to exclude reference to their revenue or net worth until after such time as the district court ruled upon their anticipated motion for judgment as a matter of law on punitive damages. JA836.[12]

The district court properly denied Defendants-Appellants' pretrial motion to and allowed evidence of their assets, revenues, and net worth because to do otherwise would have been inefficient and cumbersome, forcing Plaintiffs to re-call witnesses to elicit additional testimony. Indeed, in response to Defendants-Appellants' objection during trial to financial testimony being elicited prior to evidence that "punitive damages are warranted," the district court observed that the parties had "suspend[ed] the ordinary order of examination when a witness comes up

---

[12] Notably, in <u>McKiver</u>, this Court held that a district court should have bifurcated the issue of punitive damages from liability *not* because financial information should not have been presented in conjunction with liability, but because evidence potentially relevant to the defendants' ability to pay was properly admitted in conjunction with liability but could not have been considered in determining the amount of punitive damages to be awarded without prejudicing defendants. <u>See</u> 980 F.3d at 976-77.

and does direct for both sides and then cross sides," such that "we have

bent those rules a little bit . . . ." JA1119 (ellipsis added).

In addition, the district court eliminated any potential for unfair

prejudice from such testimony and evidence through properly instructing

the jury regarding Defendants-Appellants' ability to pay being relevant

to deciding the amount of punitive damages they could award. JA1767.

And while Plaintiffs did subsequently draw attention in closing

arguments to Defendants-Appellants' financial condition, Plaintiffs

clearly did so solely in relation to what the jury could consider in deciding

what amount of punitive damages, if any, to award:

> The judge read you an instruction about the purpose
> of punitive damages. Now, this is a separate purpose
> from what we were just talking about. This is not to
> make the Plylers whole. This is not to pay them back
> for his inability to work, for medical bills or anything
> like that. This is designed for two things. It's designed
> to punishing the defendants for their conduct, and it's
> designed to deter them and others from doing the same
> thing again.

> Keeping that in mind, North Carolina provides some
> guidance that, again, the judge has read to you an
> instruction about what you can consider in determining
> the proper amount to award in punitive damages. It's
> things that would seem pretty obvious. Reprehensible.
> How bad was their conduct? I'd say it's pretty bad. How
> aware were they of the likelihood this would be the
> outcome of likely consequences. Again, you heard

testimony they knew it was dangerous, and they did it anyways.

You also get to consider any concealment by the defendants of the facts or the consequences of their conduct. You heard Debbie Plyler testify that she was told by one of the defendants not to call OSHA. You heard that same defendant acknowledge he didn't call OSHA. That he did not. That he did not call OSHA. That no investigation was ever done. Why is that? Because the defendants were trying to conceal their conduct and prevent themselves from suffering the consequences.

You also get to consider -- and this may make sense to some of the questions that seemed a little bit out of context as the course of the trial went on. But you also get to consider the defendants' ability to pay. That's why we elicited testimony at trial that collectively these defendants have an interest in at least $71 million of real estate. You heard testimony that the Cox Brothers Farms owns farming equipment worth $6 million or more. Marion and Delano Cox, just the two of them have a million dollars in a single savings account.

You also heard testimony that Cox Brothers Farms made a profit last year of $1.4 million. I think they can pay.

I have nothing further at this time.

JA1790-1791. As such, it is unavailing for Defendants-Appellants to now suggest Plaintiffs drew attention to Defendants-Appellants' financial wherewithal for any purpose other than the amount-of-punitive-damages issue. See Defs.' Br., p. 49 (selectively quoting portion of the argument above without mentioning it was made solely vis-à-vis the issue of

punitive damages); compare JA1825 ("At the very end of her closing argument Ms. Houti made the comment, I think they can pay. . . . People aren't subject to punishment damages because they have more money than the average person. . . . You certainly should not award punitive damages simply because the defendants have more money than average.") (ellipses added).

Finally, any claim that the jury was prejudiced or inflamed by evidence related to Defendants-Appellants' largess is belied by the fact that the jury both found Robbie to be contributorily negligent and chose not to award any punitive damages. In addition, the $2.5 million in total compensatory damages the jury did award Plaintiffs only slightly exceeds the $2.4 million in economic damages that Plaintiffs' counsel summarized (as to Robbie alone), which did not even include any component of noneconomic damages (i.e., pain and suffering, etc.). JA1784-1789, JA1838-1843. In short, the record plainly shows that the admission of evidence concerning Defendants-Appellants' finances did not prejudice them in any way, such that their claim of a "'very real specter of prejudice'" rings indubitably hollow. Defs.' Br., p. 50 (quoting McKiver, 980 F.3d at 975).

IV.   The District Court Did Not Abuse Its Discretion by Admitting the Testimony of Plaintiff's Safety Expert Mr. Decker.

Defendants-Appellants next contend that the district court erred in admitting the opinions and testimony of Plaintiffs' grain bin safety expert, Mr. Decker.  Defs.' Br., pp. 50-62.  Their arguments are, again, unavailing.

"[A] court of appeals is to apply an abuse-of-discretion standard when it reviews a trial court's decision to admit or exclude expert testimony."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).  Again, an "abuse of discretion is reviewed for harmless error, and a new trial is required only when the admission of evidence affected the substantial rights of a party."  Wickersham v. Ford Motor Co., 997 F.3d at 526.  Where an expert's opinion "was harmless error at most," a court need not even reach the propriety of the district court admitting that testimony.  Id. (not reaching whether district court erred in admitting expert testimony where opinion was harmless).

A.   The district court properly performed its gatekeeping function in admitting Mr. Decker's testimony.

Defendants-Appellants initially claim the district court failed to make required determinations as to the relevancy and reliability of Mr. Decker's testimony.  Defs.' Br., pp. 51-53.  In this regard, a district court

"'must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable. In performing this gatekeeping role, a district court is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.'" United States v. Rouse, 2024 U.S. App. LEXIS 11226, at *3 (4th Cir. May 8, 2024) (quoting United States v. Smith, 919 F.3d 825, 835 (4th Cir. 2019)). A district court abuses its discretion in admitting evidence only "if the ruling is arbitrary and irrational." Id., 2024 U.S. App. LEXIS 11226, at *2 (citing United States v. Palacios, 677 F.3d 234, 242 (4th Cir. 2012)).

Prior to ruling on the admissibility of Mr. Decker's testimony, the district court reviewed Defendants-Appellants' fully briefed motion *in limine* and heard multiple rounds of oral arguments concerning their objections to Mr. Decker's testimony. JA655-722, JA749-799, JA824-832, JA1036-1040. Far from abandoning its role as gatekeeper under Daubert or abusing its discretion, the district court properly analyzed and deemed Mr. Decker's opinion relevant and reliable prior to submission to the jury. Moreover, and as set forth below, each of the district court's rulings on

Defendants-Appellants' objections were not only not "arbitrary and irrational," but instead entirely apt.

B. The district court properly admitted Mr. Decker's opinions about OSHA regulations.

The district court properly allowed Mr. Decker to testify concerning what is required to comply with OSHA regulations, and where Defendants-Appellants did or did not comply. Specifically, the district court properly followed the holding set forth in Albrecht v. Balt. & O. R. Co., 808 F.2d 329, 332 (4th Cir. 1987), and instructed the jury that while OSHA regulations could be considered as evidence of the standard of care applicable to Defendants-Appellants, a violation of an OSHA regulation does not constitute negligence in and of itself. JA1248.

"[E]xpert testimony concerning the law is routinely admitted . . . in personal injury actions where the defendant is alleged to have violated a health or safety regulation." Adams v. New Eng. Scaffolding, Inc., 2015 U.S. Dist. LEXIS 170688, at *13 (D.C. Mass. Dec. 22, 2015) (alteration and ellipsis added). "There is no general prohibition against an expert describing the application of facts to law, or stating a conclusion based on that application." Id. at *22; see also Lins v. United States, 2024 U.S. Dist. LEXIS 66991, *50 (D. Md. April 12, 2024) (citing Adams for such

proposition).  The Court in <u>Adams</u> artfully described the dividing line between permissible and impermissible expert testimony, ultimately concluding that where a "regulation only said that [the safety] guard had to be 'safe,'" that "it seems entirely reasonable to permit the expert to testify (1) that the regulation required that the guard be 'safe'; (2) that, in his opinion, the guard was not safe because it was too small; and (3) that, in his opinion, the guard should have been at least twelve inches high." <u>Id.</u> at *18-*20 (alteration added).  Ultimately, the court in <u>Adams</u> permitted the plaintiff's expert to describe the application of the pertinent OSHA regulation to the case at hand, to opine that the scaffolding at issue was non-compliant, and that the scaffolding violated the regulation.  <u>Id.</u> at *25-*26; <u>accord</u> <u>United States v. Perkins</u>, 470 F.3d 150, 160 (4th Cir. 2006) (holding that it is permissible under Fed. R. Evid. 704 to allow "officers' testimony that they saw no 'law enforcement' or 'legitimate' reason for [defendant's conduct]" under Section 1983 but not "that [defendant's] actions were 'objectively unreasonable'").

Mr. Decker's testimony was exactly the sort of permissible opinion outlined in <u>Adams</u> and <u>Perkins</u>: that OSHA regulations, including 29 C.F.R. § 1910.57 and 29 C.F.R. § 1910.272(g), required the subfloor auger

in Bin #2 to "be deenergized and . . . disconnected, locked-out and tagged, blocked-off, or otherwise prevented from operating by other equally effective means or methods" and guarded; that in his opinion, the sliding metal door over the sump hole was not an equally effective means of blocking off or guarding the subfloor auger; and that, in his opinion, a temporary guard with bars over it should have been used.  JA1263-1318.

Nor does <u>Adalman v. Baker, Watts & Co.</u>, 807 F.2d 359 (4th Cir. 1986), upon which Defendants-Appellants rely, alter the propriety of Mr. Decker's testimony.  In <u>Adalman</u>, this Court held that while experts can testify as to "facts, the inferences to be drawn from those facts, and the opinions of the expert," they are not permitted to opine "as to the meaning and applicability of the appropriate law, on the other hand" which amount to "legal conclusions." <u>Id.</u> at 366.  But Mr. Decker did not testify as to what tort law applies to Plaintiffs' claims or what legal conclusions should be drawn by the jury.  Instead, Mr. Decker opined only on the standard of care for persons and entities in Defendants-Appellants' position with respect to grain bin operation and clean out, citing to OSHA regulations as evidence of that standard of care.  <u>See, e.g.</u>, JA1377, JA1387 ("these regulations are a standard of care" and "the minimum

requirements"). This is no different than the myriad types of personal injury cases in which experts are routinely permitted – or even statutorily required – to opine as to the applicable standard of care and whether it was met by the defendant. <u>See, e.g.</u>, N.C.G.S. § 1A-1, Rule 9(j) (applicable with respect to medical malpractices cases under North Carolina law); N.C.G.S. § 8C-1, Rule 702(b) (same); <u>United States v. Campbell</u>, 963 F.3d 309, 314 (4th Cir. 2020) ("In appropriate circumstances, an expert may offer an opinion that applies the facts to a legal standard. And applying medical expertise to form an opinion on the cause of death is often the type of specialized knowledge that can help a jury."). The district court, therefore, correctly permitted Mr. Decker— who was qualified as an expert in grain bin safety, without objection, JA1260—to testify on these matters.

C. <u>The district court properly admitted Mr. Decker's testimony about OSHA regulation 1910.272 and others</u>.

Defendants-Appellants also contest Mr. Decker's testimony concerning two specific OSHA regulations, 29 C.F.R. §§ 1910.272 and 1910.146, which they contend are not applicable to this case. Defs.' Br., pp. 56-58. For example, Defendants-Appellants argue that Appendix A to Section 1910.272 provides that this regulation does not apply to "on-

farm storage or feed lots," and that because Bin #2 is used to store grain on Cox Brothers Farms, the district court abused its discretion in permitting Mr. Decker to testify about Section 1910.272. Defs.' Br., p. . 57. But Mr. Decker testified that Defendants-Appellants' operation fell within the scope of Section 1910.272 – "the agricultural handling, grain handling standard" that "applies to commercial applications and large farm applications" – because Cox Brothers Farms is "not just a grain storage – set of grain bins sitting there. [. . .] It is a company attached to and part of a storage system for a feed mill." JA1267-1268 (ellipsis added). That is appropriate.

Mr. Decker similarly testified that Section 1910.146 "gives guidance in this case because it talks about you have to define the confined spaces" and "assessing hazards and then what you do to mitigate those hazards and your permit and all that," essentially giving more information on the "grain bin entry permit" discussed in 1910.272. JA1307-1308. In response to Defendants-Appellants' argument that Section 1910.146 was irrelevant on its face, the district court ruled that

it did not "think that is necessarily true," but that Defendants-Appellants could argue that to the jury.  JA1037.[13]

As the district court noted when overruling Defendants-Appellants' objection at trial, their contention is "a factual argument."  JA1267. Defendants-Appellants were free to cross-examine Mr. Decker on his interpretation of these two regulations, but chose not to.  JA1329-JA1380, JA1390.  Defendants-Appellants also were free to – and did, JA1819-1821 – argue that neither Section 1910.272 nor Section 1910.146 were relevant to the standard of care applicable to this case, but such factual disagreement does not go to the admissibility of Mr. Decker's opinions.[14]

---

[13] Notably, Defendants-Appellants initially asked, and the district court ordered, that the OSHA regulations be redacted to remove portions about which Mr. Decker was not testifying.  JA1270-1271.  However, the parties subsequently stipulated "that the regulations come in in their entirety unredacted."  JA1459-1469, JA2542-2620 (Trial Exhibits 90-94).

[14] To the extent Defendants-Appellants' contention that Section 1910.146 is not relevant is based on an argument not made to the jury, it is noteworthy that, as cited in Plaintiffs' prior brief on this issue, JA782: the Occupational Safety and Health Review Commission decisions have held that post-harvesting activities do not fall within "agricultural operations" and thus would not be excluded from this regulation. Secretary of Labor v. J.C. Watson Company, 22 BNA OSHC 1235 (2008) (https://www.oshrc.gov/assets/1/6/05-0175_05-0176.pdf?2993).  The storage of grain arguably constitutes a post-harvesting activity that would not fall under the agricultural exception.

Accordingly, having correctly ruled that OSHA regulations were "not being treated as law" but "as guidance," the district court went to properly conclude that "determining what regulation or not . . . to apply" is up "the jury as to this standard of care versus that standard of care." JA1037 (ellipsis added). Accordingly, Defendants-Appellants' arguments concerning the application and relevancy of certain OSHA regulations was "argument." Id.

D. The district court properly admitted Mr. Decker's opinion about the sliding steel door.

The district court also properly allowed Mr. Decker to opine that the sliding steel door over the sump hole is not an adequate guard because it could roll open when stepped on. Defendants-Appellants fail in contending otherwise. Defs.' Br., pp. 58-60.

Defendants-Appellants quibble with the basis for Mr. Decker's knowledge, arguing that it is merely speculation and insufficient under Fed. R. Evid. 702 because he did not test the sliding doors at Cox Brothers Farms. Defs.' Br., pp. 58-60. Specifically, Mr. Decker opined that the sliding metal doors "sit on nylon rollers" that "allow them to roll open and shut very easily," such that they are not a proper guard. JA1287-1288; JA2513. "The slide gates were never designed to be a guard or to protect

contact with the auger;" instead it's "a metering device . . . to keep grain out of the auger."  JA1288 (ellipsis added).

Defendants-Appellants cite <u>Hathaway v. Bazany</u>, 507 F.3d 312 (5th Cir. 2007), and <u>Lantec, Inc. v. Novell, Inc.</u>, 306 F.3d 1003 (10th Cir. 2002), for the proposition that expert testimony is inadmissible where it is nothing more than a subjective belief or anecdotes.  These cases are inapposite, however, as Mr. Decker's knowledge is not grounded in mere anecdotal evidence, but instead reliable facts, experience, and personal observation.

Mr. Decker's opinion is based on his experience as someone who has spent a career designing grain bins, ensuring their safety, and consulting or serving as an expert in numerous cases involving grain bin injuries. JA2236-2239 (Mr. Decker's CV).  Mr. Decker has personally observed the operation of thousands of grain bin unloading systems during his career, including the sliding metal doors over sump holes; he's "done it myself. I've worked on them.  I've opened them.  I've closed them."  JA1290-1291. And Mr. Decker has "witnessed those doors just with the vibration of the auger when the bin was empty vibrating open."  JA1291.

And Mr. Decker specifically testified not just to a passing anecdote in conversation, but that he was personally "involved in a case out in California where a man step [sic] down and it rolled open and he lost his leg in that auger." JA1291. Mr. Decker also testified that when he operated the crank at Cox Brothers Farms, he was able to open and shut the sliding metal grate using just two fingers and his thumb on the crank. JA1292. Given his extensive knowledge and firsthand experience, there was no need for Mr. Decker to roll open the door inside Bin #2. JA1370-1371. Defendants-Appellants falter in suggesting otherwise.

E.    Any error by the district court was harmless.

Finally, even if any of the district court's evidentiary rulings were erroneous, which Plaintiffs deny, they were harmless. Defendants-Appellants were able to conduct fulsome cross-examination of Plaintiffs' witnesses. This included Debbie concerning her conversation with Campbell, JA1597-1598, as well as of Mr. Decker and his opinion concerning the application of and compliance with OSHA regulations. JA1329-1379. Defendants-Appellants also elicited testimony from Campbell that he never told Debbie not to contact OSHA, JA1603-1604, and from Rusty that he had tried to slide open the metal door over the

sump hole unsuccessfully. JA1170. Defendants-Appellants also were free to call the safety expert they had designated during the course of litigation to counter any opinions by Mr. Decker concerning OSHA regulations, but chose not to. Accordingly, and as further evidenced by the verdict finding Robbie was contributorily negligent and refusing to award punitive damages, the jury's verdict was not substantially swayed by the admission or exclusion of this evidence, and any error in the district court's evidentiary rulings was harmless. <u>United States v. Landersman</u>, 886 F.3d 393, 413 (4th Cir. 2018) ("In order for an evidentiary ruling to be harmless, we must find that the judgment was not substantially swayed by the error.").

V. <u>If a New Trial is Ordered Under Fed. R. Civ. P. 50(e), Then This Court Should Determine that the District Court Erred in Issuing an Instruction Limiting the Jury's Ability to Consider the Lack of an OSHA Investigation and Testimony that a Defendant Instructed Plaintiff Deborah Plyler Not to Contact OSHA</u>.

As noted above, ordering a completely new trial is the appropriate remedy if this Court were to determine that the district court erred in denying Defendants-Appellants' motion for judgment as a matter of law on the issue of last clear chance. And if that occurs, then this Court likewise should determine that the district court erred in issuing an

instruction limiting the jury's ability to consider the lack of an OSHA investigation, or testimony that Campbell directed Debbie not to contact OSHA, only for purpose of determining punitive damages, and not also for ascribing liability.

A.   Standard of review for limiting instructions.

Appellate courts review a trial court's "decision about whether to give a limiting instruction" for abuse of discretion. United States v. Velazquez-Rivera, 366 F.3d 661, 666 (8th Cir. 2004); accord United States v. Davis, 845 F.3d 282, 291 (7th Cir. 2016) ("[W]hether to give a contemporaneous limiting instruction is 'committed to the discretion of the district court ... and our review is deferential.'"). Though this Court does not appear to have confirmed the standard of review from the decision to grant a limiting instruction, this Court does review other evidentiary rulings, such as the grant of a motion *in limine*, for an abuse of discretion. Projects Mgmt. v. Dyncorp Int'l LLC, 734 F.3d 366, 373 (4th Cir. 2013).

B.   The district court erred in limiting the jury's consideration of the OSHA-related testimony to the determination of punitive damages, and not liability.

1.   Defendants-Appellants' failure to report to OSHA is probative of liability.

At trial, Campbell testified that he "did not" call OSHA to report Robbie's accident, that "[t]o this day we did not call OSHA." JA1603. The district court erred in ruling that this testimony of Defendants-Appellants' lack of an OSHA investigation was "not relevant for purposes of determining Defendants' liability" and issuing a limiting instruction to the jury not to consider that evidence for such a purpose. JA1866. The jury should have been permitted to consider testimony concerning Defendants-Appellants' failure to report Robbie's jobsite injury to OSHA for investigation in determining their liability.

Despite acknowledging that "the threshold for relevancy is low," the district court went on to hold that testimony that Defendants-Appellants did not report to OSHA was not relevant under Fed. R. Evid. 401. JA1866. According to the district court, North Carolina's requirement that "gross negligence or punitive damages must be supported by willful and wanton conduct connected with the alleged injury" is a temporal one. Id. The district court issued its limiting instructed based on the fact that

Defendants-Appellants' failure to report to OSHA "occurred after the injury itself," and "the alleged conversation during which Defendants instruct Mrs. Plyler not to contact OSHA regarding the injury happened the evening of November 9, 2020—nearly half-a-day after the accident occurred." JA1866-1867. The district court incorrectly held that neither "the failure to report [n]or communications asking others to also not report are connected with Mr. Plyler's injury," and "post-injury evidence is not relevant to any claims of liability before the jury." JA1867.

In so ruling, the trial court misapplied the holding in <u>Schenk</u>, 613 S.E.2d at 507. There, the North Carolina Court of Appeals held that there was "no evidence that the destruction of the memorandum was related to the injuries suffered by plaintiffs," not because it happened before or after their asbestos-related injuries, but because "the underlying conduct alleged in the memorandum was not necessarily connected to asbestos." <u>Id.</u>

Moreover, in reaching its ruling, the district court misunderstood the connection between Defendants-Appellants' lack of reporting to OSHA and discouraging Debbie to do the same, finding this irrelevant to liability because the failure to notify OSHA did not proximately cause

Plaintiffs' injuries. The district court failed to appreciate that the refusal to communicate with OSHA *is* probative of Defendants-Appellants' culpability in that a jury could reasonably infer that Defendants-Appellants failed to report the incident out of fear OSHA may find them responsible, the conditions at Cox Brothers Farms unsafe, or their policies and procedures lacking. Plaintiffs do not contend that the failure to report to OSHA or instruction to Debbie not to notify OSHA was a proximate cause of Robbie's injuries; rather that testimony evidences the reckless indifference with which Defendants-Appellants' underlying negligent and grossly negligent conduct *did* proximately cause those injuries. The district court's reliance on <u>King v. Allred</u>, 333 S.E.2d 758 (N.C. Ct. App. 1985), to support its ruling is thus misplaced. JA1866. This is so because that case actually holds that defendant's "obliviousness to the duty to stop at the five stoplights between the lounge and the accident" was evidence of the wantonness of defendant's conduct – not that the failure to stop at prior intersections was itself the proximate cause of the eventual crash. <u>See</u> <u>id.</u> at 761.

Defendants-Appellants' failure to comply with this regulation and report Robbie's grain bin injury to OSHA is probative evidence that they

believed they were responsible for Robbie's injuries but did not want to document that or have OSHA investigate.[15] Indeed, other trial courts have recognized that a failure to report an accident per federal regulations is evidence of negligence. In <u>Magee v. J.R. Simplot Co.</u>, 2021 U.S. Dist. LEXIS 130628, at *2-3 (D. Idaho July 12, 2021), a commercial snowplow operated by the defendant's employee collided with a passenger vehicle; the defendant then failed to conduct a post-accident investigation and report its results to USDOT as required by USDOT regulations. The district court denied the defendant's motion *in limine* to exclude that evidence, holding that the defendant's failure to report the accident "is relevant to Defendant's negligence. It tends to prove that the Defendant may have believed it was responsible for the accident and did not want to document its negligence, so it intentionally did not file the report." <u>Id.</u> at *26-27. Similarly, a hit-and-run driver fleeing the scene in violation of a statute requiring they stop and render aid, even

---

[15] That the absence of documentation a jury may ordinarily expect to see – in this case, the lack of an OSHA investigation report – is admissible is underscored by the hearsay exception in Fed. R. Evid. 803(10), which provides that the failure to locate a public record can be admitted as evidence that the record does not exist or the "matter did not occur or exist."

though "when taken alone such conduct may have no causal connection with the act which caused the injuries, . . . is a circumstance which may be considered, in connection with his other acts preceding the injury, as tending to establish his conduct in causing the injury as being negligence." Battle v. Kilcrease, 189 S.E. 573, 573 (Ga. Ct. App. 1936); accord Bellamy v. Edwards, 354 S.E.2d 434, 438 (Ga. Ct. App. 1987).

Further, the failure to report an accident is relevant to whether a defendant's conduct was reckless or willful or wanton in support of gross negligence. Conduct which "manifest[s] a reckless indifference to the rights of others" constitutes gross negligence, such that the "wrongdoer's conduct is so reckless or so manifestly indifferent to the consequences . . . as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." Foster, 148 S.E. at 37-38. An act is willful when there is an "intentional failure to carry out some duty imposed by law or contract which is necessary to protect the safety of the person or property to which it is owed." Abernathy v. Consol. Freightways Corp., 362 S.E.2d 559, 561 (N.C. 1987). Willful and wanton conduct "can be shown by 'a reckless indifference to the consequences of the act.'" Russ, 732 F. Supp. 2d at 609. Here, the lack of OSHA reporting is highly probative of

Defendants-Appellants' conscious and intentional disregard for Robbie's safety and recklessness at the time of their grossly negligent in failing to warn Robbie that they'd removed the center safety bar from the sump – a jury could reasonably infer that Defendants-Appellants were more concerned for their own financial welfare than that of their employees. Certainly, Defendants-Appellants' refusal to report Robbie's injuries, and communications designed to prevent such reporting, are relevant to Defendants-Appellants' knowledge of their duty to protect their employees.

Indeed, "post-accident behavior" can provide "additional evidence of recklessness that imports a heedless indifference to the safety and rights of others." State v. Cearley, 2005 N.C. App. LEXIS 1568, *13 (N.C. Ct. App. Aug. 2, 2005) (unpublished) (finding that defendant's "providing false information to the investigating officer at the scene, thereby delaying investigation into his own culpability for several months" was evidence of recklessness on charges including involuntary manslaughter). In other words, Defendants-Appellants' intentional choice not to report Robbie's injuries to OSHA evinces a conscious and

callous disregard for Robbie's welfare. The district court erred in surmising otherwise.

      2.    <u>Campbell's Instruction to Debbie Plyler Not to Contact OSHA Is Probative on Defendants-Appellants' Liability</u>.

The jury should also have been permitted to consider testimony concerning conversations between the parties about reporting Robbie's injuries to OSHA in determining Defendants-Appellants' liability.

As Debbie testified, when Campbell picked her up from the hospital later on the night Robbie was injured, Campbell said: "[T]hat him and his dad had spoke and had discussed that they did not want us to call OSHA or anybody. That we need to talk with them first because they said too many families depending on getting a paycheck for OSHA to get involved." JA1596.

That the failure to report a workplace injury to OSHA is probative on the issue of gross negligence is especially true where further testimony reveals that the defendants actively instructed employees or others *not* to report an accident. As Debbie testified, on the very evening of Robbie's traumatic injury, Campbell told her that he had conferred with Rusty— his father and the person in charge of the day-to-day operations of Cox Brothers Farms—and that Debbie should not report her husband's

serious injury to OSHA. JA1596. This conversation is striking evidence of Defendants-Appellants' knowledge of both OSHA requirements for reporting accidents and their desire to conceal Mr. Plyler's workplace injuries from OSHA. Because Campbell's words are probative both as to Defendants-Appellants' malice and conscious and reckless disregard for Robbie's safety and wellbeing, they should be considered by the jury in determining Defendants-Appellants' liability. This Court should instruct the district court accordingly in the unlikely event of a new trial.

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's denial of Defendants-Appellants' motions for judgment as a matter of law and for a new trial. But in the event of a new trial, this Court should instruct the district court to permit the jury to consider, for all purposes, evidence regarding the lack of an OSHA investigation and that Campbell directed Debbie not to contact OSHA.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully requests oral argument, which they believe may assist this Court with any questions regarding the record below and the arguments presented herein.

Respectfully submitted this the 16th day of December, 2024.

JAMES, MCELROY & DIEHL, P.A.

/s/ Preston O. Odom, III
_____
Preston O. Odom, III, NC State Bar # 29587
J. Alexander Heroy, NC State Bar # 39752
Jennifer M. Houti, NC State Bar # 45442
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
podom@jmdlaw.com | aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

1.     This **Opening/Response Brief of Plaintiffs** complies with the typeface requirements of Fed. R. App. P. 32(a)(5) (2024) and the type style requirements of Fed. R. App. P. 32(a)(6) (2024) because it has been prepared in a proportionally spaced typeface with serifs using [Microsoft Word 2010] in [14-point Century Schoolbook font].

2.     This **Opening Brief of Plaintiffs** also complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B)(i) because it contains **13,368** words [i.e., no more than 15,300 words], excluding the sections that Fed. R. App. P. 32(f) exempts from counting.

JAMES, MCELROY & DIEHL, P.A.

/s/ Preston O. Odom, III
Preston O. Odom, III, NC State Bar # 29587
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned certifies that this **OPENING/RESPONSE BRIEF OF PLAINTIFFS** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which will transmit notification of such filing, constituting service thereof, to Defendants-Appellees' counsel of record as follows:

L. Cameron Caudle, Jr. – ccaudle@caudlespears.com

Christopher P. Raab – craab@caudlespears.com

This the 16th day of December, 2024.

JAMES, MCELROY & DIEHL, P.A.

/s/ Preston O. Odom, III

Preston O. Odom, III, NC State Bar # 29587
J. Alexander Heroy, NC State Bar # 39752
Jennifer M. Houti, NC State Bar # 45442
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
podom@jmdlaw.com | aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Counsel for Plaintiffs*