No. 24-1445 (L)
(3:22-cv-00413-FDW-DCK)

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ROBBIE G. PLYLER; DEBORAH PLYLER,

    *Plaintiffs-Appellees/Cross-Appellants,*

v.

RUSSELL F. COX; DELANO S. COX; MARION F. COX, CAMPBELL COX; COX BROTHERS FARMS, a North Carolina general partnership,

    *Defendants-Appellants/Cross-Appellees*,

and

COX BROTHERS, INC., d/b/a Cox Brothers Farm; COX FARM MANAGEMENT, LLC d/b/a Cox Brothers Farm; COX LAND INVESTMENTS, LIMITED PARTNERSHIP; COX LAND COMPANY, LLC,

    *Defendants.*

**REPLY BRIEF OF PLAINTIFFS**

Preston O. Odom, III
J. Alexander Heroy
Jennifer M. Houti
JAMES, MCELROY & DIEHL P.A.
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
(704) 372-9870 (telephone)
podom@jmdlaw.com
aheroy@jmdlaw.com
jhouti@jmdlaw.com

# TABLE OF CONTENTS

**Table of Contents**................................................................................i

**Table of Authorities**..........................................................................ii

**Argument**............................................................................................1

    I.    Plaintiffs Presented a Reliable Statement of the Case...............1

    II.   If This Court Disturbs the District Court's Denial of Defendants-Appellants' Motion for Judgment as a Matter of Law on the Issues of Last Clear Chance or Gross Negligence, Then This Court Should Remand for a New Trial................................................................................................3

    III.  If a New Trial is Ordered Under Fed. R. Civ. P. 50(e), Then This Court Should Determine that the District Court Erred in Issuing an Instruction Limiting the Jury's Ability to Consider the Lack of an OSHA Investigation and Testimony that a Defendant Instructed Plaintiff Deborah Plyler Not to Contact OSHA.....................................................7

**Conclusion**....................................................................................... 12

**Certificate of Compliance** ............................................................. 13

**Certificate of Service** ..................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

Azzolino v. Dingfelder,
    71 N.C. App. 289, 322 S.E.2d 567 (1984) ............................................. 8

Bunn v. Oldendorff Carriers GMBH & Co. KG,
    723 F.3d 454 (4th Cir. 2013) ....................................................... 6-7

Creech v. Town of Cornelius,
    No. COA24-505, 2024 N.C. App. LEXIS 1012 (Dec. 17, 2024) ............ 5

King v. Allred,
    76 N.C. App. 427, 333 S.E.2d 758 (1985) ............................................ 8

Infiestra-Montano v. Cocca Dev., LTD,
    2019 U.S. Dist. LEXIS 225806 (D. Wyo. May, 31, 2019) ................... 11

Neely v. Martin K. Elby Constr. Co.,
    386 U.S. 317 (1967) .................................................................... 7

Paris v. Michael Kreitz, Jr., P.A.,
    75 N.C. App. 365, 331 S.E.2d 234 (1985) ............................................ 8

Schenk v. HNA Holdings, Inc.,
    613 S.E.2d 503 (N.C. Ct. App. 2005) ................................................ 8

State v. Cearley,
    2005 N.C. App. LEXIS 1568 (N.C. Ct. App. Aug. 2, 2005) ............ 9, 10

State v. Jones,
    353 N.C. 159, 538 S.E.2d 917 (2000) ................................................. 9

**Rules and Other Authorities**

Fed. R. Civ. P. 50(e) ............................................................................. 6, 7

N.C.P.I. – § MV 105.15 (2024) ................................................................ 5

# ARGUMENT

I. <u>Plaintiffs Presented a Reliable Statement of the Case</u>.

Defendants-Appellants spend much of their brief picking apart Plaintiffs' Statement of the Case in a misguided attempt to discredit Plaintiffs' reliability. <u>See</u> <u>Response and Reply Brief of Appellants</u>, pp. 24-31. Defendants-Appellants' efforts fall flat.[1]

Defendants-Appellants make much of Plaintiffs' characterization of the evidence as to why Defendants-Appellants removed the safety bar over each sump, arguing it is misleading to say the alterations were made "so that grain could flow easier and faster." <u>Response and Reply Brief of Appellants</u>, pp. 7, 25 (citing <u>Opening/Response Brief of Plaintiffs</u>, pp. 6, 36). Defendants-Appellants contend this description contradicts the parties' stipulation that the bar was removed "to prevent the sump from becoming clogged by grain clumping together." JA2624. But the two

---

[1] Although Plaintiffs properly cited to Robbie's testimony that when he arrived at Bin #2 "everything's running," <u>Opening/Response Brief of Plaintiffs</u>, p. 7 (citing JA925), Plaintiffs agree with Defendants-Appellants that the sweep auger was off when Robbie arrived and at the time of Robbie's injury. JA976. Plaintiffs apologize for such inadvertent mistake which – as Defendants-Appellants acknowledge – was confusing but minor. <u>See</u> <u>Response and Reply Brief of Appellants</u>, p. 25.

1

statements are not incompatible, as grain necessarily flows easier when it is not clogged.  Indeed, Marion confirmed this during his testimony:

> Q. So is it correct that the bar was removed to allow the grain to flow into the sump drain more easily?
>
> A. Absolutely.  That's why it was cut out.
>
> Q. Okay. And was the bar cut out to allow the grain to flow through the sump drain more quickly?
>
> A. Not quickly.  Just easier.  Just so it would flow. With the bar in there it would not flow.  Then when you got to get in there and go to punch it with the rod and get it to move.  And that's when -- then the rest of the grain in that bin there falls and kills people.

JA1246.  And so did Rusty.  JA1105 ("So if you're asking if I ordered removal of those bars for grain flow, yes, sir, I did.").  Similarly, grain will necessarily flow faster out of an unclogged sump drain than a clogged one.

Defendants-Appellants also claim it is false for Plaintiffs to say that Robbie "could not" see that the safety bar had been removed over the sumps in Bin #2.  Response and Reply Brief of Appellants, p. 27 (citing Opening/Response Brief of Plaintiffs, p. 7).  In truth, Robbie testified that, because it was so dusty inside the bin, he would have had to physically have "bent over and looked at the sump hole" to see the bars over the sump or even whether the sliding metal door was open or closed.

2

JA978, JA983-984. His testimony supports Plaintiffs' statement, Defendants-Appellants' disagreement notwithstanding.

Finally, Defendants-Appellants take issue with two facts Plaintiffs did not mention in their Statement of the Case. See Response and Reply Brief of Appellants, pp. 28-30. Plaintiffs acknowledge that their Statement of the Case omits the fact that Robbie opened the sliding steel door over the sump holes that day, and that, as Defendants-Appellants characterize his testimony, Mr. Decker opined that the removal of the safety bars was not negligent in and of itself. See id. Plaintiffs omitted these facts because they are not determinative on appeal.

As set forth in Plaintiffs' initial brief, the only expert opinion the jury heard was Mr. Decker's testimony that the sliding steel door would roll open easily and was not a proper guard. JA1287-1288, JA2513.[2] Because such sliding steel door could not serve as a safety guard over the sumps, it is irrelevant whether it was open a couple of inches or twelve; had the bar been there, Robbie's foot would not have been pulled into the auger. JA1246 ("Q: If the door had been opened 16 to 18 inches but all

---

[2] The Operator's Manual applicable to Bin #2 further provides as Operating Safety Rule number 2 "never step or walk on equipment covers, grates, or guards." JA1112.

3

three bars were still there on the sump drain, Mr. Plyler's foot would not have been able to fall through, correct? A. [Marion] That would be – yeah."); JA1201 ([Rusty]: "But would Robbie's foot have gone through there with the bars on? I guess not."). And while Mr. Decker stated that removing the safety bars by itself was not negligent, he clearly opined that "[i]f you remove the bars or don't have bars, the employer has to provide temporary sump guards to protect if you are going to put employees in there." JA1355 (alteration added).

II. If This Court Disturbs the District Court's Denial of Defendants-Appellants' Motion for Judgment as a Matter of Law on the Issues of Last Clear Chance or Gross Negligence, Then This Court Should Remand for a New Trial.

Defendants-Appellants contend this Court should reverse the district court and remand for judgment to be entered as a matter of law on the issues of last clear chance and gross negligence. See Response and Reply Brief of Appellants, pp. 41-57. To the contrary, this Court to affirm the district court and allow the jury's verdict to stand; or, at worst, remand for a new trial on all issues.

In their initial brief, see Opening/Response Brief of Plaintiffs, pp. 18-24, Plaintiffs described the evidence at trial that Defendants-Appellants had the last clear chance to avoid Robbie's injury because

4

their removal of the safety bar over the sump drain—without installing an adequate substitute—placed Robbie in peril, but Robbie did not believe he was in a position of peril (and therefore could not escape it) because he was unaware the safety bar was missing. JA913, JA948-949, JA972, JA983, JA993, JA1287-1288; see Creech v. Town of Cornelius, No. COA24-505, 2024 N.C. App. LEXIS 1012 (Dec. 17, 2024) (affirming submission of last clear chance issue to jury where "Plaintiff did not believe he was in danger" because he was unaware of the peril created by defendant).[3] As also set forth previously, see Opening/Response Brief of Plaintiffs, pp. 33-38, sufficient evidence was presented at trial to send the issue of gross negligence to the jury (particularly given Rusty's incredible testimony that Defendants-Appellants relied on sliding doors rather than safety bars because they regularly used children as young as eight years

---

[3] And regarding the doctrine of last clear chance, Plaintiffs further note that contrary to what Defendants-Appellants suggest, see Response and Reply Brief of Appellants, p. 43 n.2, Plaintiffs' theory of the case was not limited to the "helpless" plaintiff scenario to the exclusion of the "inattentive" plaintiff scenario. Rather, the court's instruction to the jury on that issue necessarily encompassed both theories of the doctrine. Compare JA1750 (giving such instruction), with N.C.P.I. – § MV 105.15 (2024) (prescribing pattern jury instruction that does not distinguish between the two doctrines).

5

old to clean out grain bins, young boys whose "little feet would go right through any bar segment of bars we've ever had," JA1142-1145).

Should this Court nonetheless reverse the denial of Defendants-Appellants' motion for judgment as a matter of law, it should not enter judgment in their favor but instead order a new trial on all issues in accordance with Fed. R. Civ. P. 50(e). Defendants-Appellants do not argue that a new trial would be improper; rather, they contend merely that Plaintiffs have failed to articulate any reason why a new trial should be ordered. See Response and Reply Brief of Appellants, pp. 62-63. Yet Plaintiffs' entire cross-appeal revolves around their case at trial being hampered by the district court's limiting instruction on the jury's ability to consider the lack of an investigation by OSHA or Campbell instructing Debbie not to report Robbie's injury to OSHA.

A plaintiff-appellee may ask this Court for – and be entitled to – a new trial "if '[t]he erroneous exclusion of evidence … would have strengthened his case.'" Bunn v. Oldendorff Carriers GMBH & Co. KG, 723 F.3d 454, 468 (4th Cir. 2013) (quoting Neely v. Martin K. Elby Constr. Co., 386 U.S. 317, 327 (1967)). Here, the district court's incorrect instruction to the jury prohibited the jurors from considering testimony

6

regarding the absence of an OSHA investigation and that Campbell instructed Debbie not to contact OSHA about Robbie's injuries when determining Defendants-Appellants' liability; but for that limiting instruction, Plaintiffs' case would have been strengthened by the jury's ability to consider such testimony on the issues of Defendants-Appellants' negligence, gross negligence, and even last clear chance.

III. <u>If a New Trial is Ordered Under Fed. R. Civ. P. 50(e), Then This Court Should Determine that the District Court Erred in Issuing an Instruction Limiting the Jury's Ability to Consider the Lack of an OSHA Investigation and Testimony that a Defendant Instructed Plaintiff Deborah Plyler Not to Contact OSHA</u>.

Defendants-Appellants continue to argue that the district court properly limited the jury's consideration of Campbell and Debbie's OSHA-related testimony, but, again, miss the mark. <u>See</u> <u>Response and Reply Brief of Appellants</u>, pp. 31-40. In essence, Defendants-Appellants incorrectly argue that because no failure to report to OSHA caused Robbie's injury, no testimony regarding such failure could possibly be admissible as to Defendants-Appellants' liability. In truth, however, while Defendants-Appellants' lack of OSHA reporting and discouraging Debbie to report to OSHA may not constitute willful and wanton conduct in and of itself, it ***is*** evidence of Defendants-Appellants' reckless

7

indifference and culpable state of mind when they engaged in the negligent conduct that does render them liable.

As an initial matter, the cases Defendants-Appellants rely upon do not address the admissibility of evidence, only its sufficiency. See, e.g., King v. Allred, 76 N.C. App. 427, 432-33, 333 S.E.2d 758, 761 (1985) (jury permitted to consider defendant's testimony of pre-injury conduct as evidence of willful and wanton conduct); Schenk v. HNA Holdings, Inc., 170 N.C. App. 555, 558, 613 S.E.2d 503, 506-507 (2005) (defendant's testimony of willful and wanton post-injury conduct admitted with no limiting instructions); Paris v. Michael Kreitz, Jr., P.A., 75 N.C. App. 365, 374, 331 S.E.2d 234, 241-42 (1985) (evidence of intentionally altered documents admitted at trial); Azzolino v. Dingfelder, 71 N.C. App. 289, 320, 322 S.E.2d 567, 587-88 (1984) (considering later altering of medical records in determining summary judgment on punitive damages claim).

The Court of Appeals in Azzolino, Paris, and Schenk held that the post-injury alteration or destruction of records does not itself constitute conduct that could support gross negligence or punitive damages. All of those cases, however, are silent as to whether post-injury conduct is relevant to Defendants-Appellants' state of mind and recklessness at the

time they acted tortiously. Yet Defendants-Appellants contend that this Court should rely on those opinions and disregard the decision in State v. Cearley, 2005 N.C. App. LEXIS 1568, *13 (N.C. Ct. App. Aug. 2, 2005), that does directly address this issue.

According to Defendants-Appellants, Cearley is little more than nonbinding precedent in the criminal context, as the criminal charges required "either actual intent or culpable negligence … from which such intent may be implied." Response and Reply Brief of Appellants, p. 45. But in fact, the Court of Appeals first observed in Cearley that "[w]hen a safety statute is unintentionally violated, culpable negligence exists where the violation is 'accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable [foreseeability], amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others.'" 2005 N.C. App. LEXIS 1568 at *8 (alterations added) (quoting State v. Jones, 353 N.C. 159, 165, 538 S.E.2d 917, 923 (2000)). The Court of Appeals went on to hold that the "defendant's post-accident behavior in deliberately providing false information to the investigating officer at the scene, thereby delaying investigation into his own culpability for

9

several months, provides additional evidence of recklessness that imports a heedless indifference to the safety and rights of others," affirming the denial of defendant's motion to dismiss for insufficient evidence. 2005 N.C. App. LEXIS 1568 at *13. Here, Defendants-Appellants' failure to notify OSHA and discouraging Debbie to do the same likewise supply evidence of recklessness that is relevant to a jury's determination as to whether Defendants-Appellants – at the time of their gross negligence in removing the safety bar and then failing to take any other safety measures – were heedlessly and recklessly indifferent to the safety and rights of others.

Defendants-Appellants also argue that the post-accident conduct in Cearley was only relevant because it "occurred at the scene of the accident immediately after the collision." Response and Reply Brief of Appellants, p. 45. But the Court of Appeals did not mention anything about the timing of the defendant's post-accident behavior, the defendant made repeated false statements about the accident, including one made months afterwards, and "did not confess to being the driver of the vehicle" for over six months. Id. at *11-12. Similarly, here, Campbell testified that he did not call OSHA the day of Robbie's injuries to report the

accident, or at any date thereafter. JA1603. Debbie further testified that the very day Robbie was injured, that night on the way home from the hospital, Campbell told Debbie "that him and his dad had spoke and had discussed that they did not want us to call OSHA or anybody." JA1596.

Defendants-Appellants also waywardly cite <u>Infiestra-Montano v. Cocca Dev., LTD</u>, 2019 U.S. Dist. LEXIS 225806, *24-25 (D. Wyo. May, 31, 2019), for the proposition that evidence concerning a failure to report an incident to OSHA is irrelevant to liability because it did not cause a plaintiff's injuries. In reality, the district court in <u>Infiestra-Montano</u> held only that an *expert* could not testify regarding OSHA's reporting requirements and regulations – not that fact witnesses could not testify about not reporting to OSHA or being told not to do so. <u>Id.</u> at *25.

Again, while the failure to report to OSHA and the instruction to Debbie not to do so did not proximately cause Robbie's injuries, that testimony is relevant evidence of the reckless indifference underlying Defendants-Appellants' negligent and grossly negligent conduct. A jury should be permitted to consider that evidence in determining Defendants-Appellants' liability.

## CONCLUSION

Based on the foregoing, this Court should affirm the district court's denial of Defendants-Appellants' motions for judgment as a matter of law and for a new trial. But in the event it disturbs that ruling, this Court should order a new trial and instruct the district court to permit the jury to consider, for all purposes, evidence regarding the lack of an OSHA investigation and that Campbell directed Debbie not to contact OSHA.

Respectfully submitted this the 5th day of February, 2025.

**JAMES, MCELROY & DIEHL, P.A.**

/s/ Preston O. Odom, III
_____
Preston O. Odom, III, NC State Bar # 29587
J. Alexander Heroy, NC State Bar # 39752
Jennifer M. Houti, NC State Bar # 45442
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
podom@jmdlaw.com | aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

1. This **Reply Brief of Plaintiffs** complies with the typeface requirements of Fed. R. App. P. 32(a)(5) (2025) and the type style requirements of Fed. R. App. P. 32(a)(6) (2025) because it has been prepared in a proportionally spaced typeface with serifs using [Microsoft Word 2010] in [14-point Century Schoolbook font].

2. This **Reply Brief of Plaintiffs** also complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(C) (2025) because it contains **2,417** words [i.e., no more than 6,500 words], excluding the sections that Fed. R. App. P. 32(f) (2025) exempts from counting.

                                        **JAMES, MCELROY & DIEHL, P.A.**

                                        /s/ Preston O. Odom, III
                                Preston O. Odom, III, NC State Bar # 29587
                                *Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned certifies that this **REPLY BRIEF OF PLAINTIFFS** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which will transmit notification of such filing, constituting service thereof, to Defendants-Appellants' counsel of record as follows:

L. Cameron Caudle, Jr. – ccaudle@caudlespears.com

Christopher P. Raab – craab@caudlespears.com

This the 5th day of February, 2025.

**JAMES, MCELROY & DIEHL, P.A.**

/s/ Preston O. Odom, III
------
Preston O. Odom, III, NC State Bar # 29587
J. Alexander Heroy, NC State Bar # 39752
Jennifer M. Houti, NC State Bar # 45442
525 North Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 333-5508
podom@jmdlaw.com | aheroy@jmdlaw.com
jhouti@jmdlaw.com
*Counsel for Plaintiffs*